**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL WILLIAMS, KELLIE PREVOST, SCOTT WARBURTON, DEMETRIA TOBUTIS, RICHARD MEKETON, and LISA MIKEC, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

NBCUNIVERSAL MEDIA, LLC, NBC NEWS DIGITAL LLC, and the COMCAST CORPORATION

*Defendants*.

Case No: 1:25-cv-07614-LTS-VF

Hon. Laura Taylor Swain

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

BACKGROUND ........ 3

I. The NBCU Apps ........ 3

II. The mParticle SDK ........ 4

III. NBCU Apps' Terms & Privacy Policy ........ 7

IV. Plaintiffs' Experiences ........ 8

V. Procedural History ........ 10

LEGAL STANDARD ........ 11

ARGUMENT ........ 12

I. Plaintiffs' Complaint Violates Rule 8 Through Improper Group Pleading........ 12

II. All But One of Plaintiffs' Claims Must Be Dismissed Because They Were Brought Outside the Statute of Limitations. ........ 13

III. Plaintiffs' VPPA Claim Fails. ........ 17

A. The Complaint Does Not Allege a Disclosure of PII. ........ 17

1. AdId, Zip Code, GPS, and Gender Are Not PII Under Solomon. ........ 18

2. Email Addresses Are Not PII Under *Solomon*. ........ 19

3. The Complaint's Allegations About First and Last Names Do Not Support Plaintiffs' VPPA Claim. ........ 20

B. Plaintiffs Do Not Adequately Plead That Any Disclosure of PII Was Sufficiently "Knowing." ........ 21

IV. Plaintiffs' VCPA Claim Fails. ........ 22

V. Plaintiffs' GBL § 349 Claim Fails. ........ 23

A. The GBL § 349 Claim Fails With Plaintiffs' Video Privacy Claims. ........ 24

B. Plaintiffs Fail to Allege Materiality or Injury. ........ 24

C. Plaintiffs Do Not Plead an Actionable Misrepresentation. ........ 26

D. Plaintiffs Do Not Plead an Actionable Omission. ........ 26

E. Plaintiffs Fail to Allege They Were Purportedly Deceived in New York. .................... 27

VI. Plaintiffs' Unjust Enrichment Claim Fails. ........................................................................ 28

CONCLUSION ..................................................................................................................... 29

# TABLE OF AUTHORITIES


**Page(s)**

*4 K & D Corp. v. Concierge Auctions, LLC*,
2 F. Supp. 3d 525 (S.D.N.Y. 2014) ....................28

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ....................26, 28

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025)....................19, 22, 24, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ....................12

*Brown v. Dolce & Gabbana USA Inc.*,
2025 WL 1919549 (S.D.N.Y. July 11, 2025) ....................12

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68 (2d Cir. 2022) ....................11

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)....................28

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ....................19

*Dimond v. Darden Rests., Inc.*,
2014 WL 3377105 (S.D.N.Y. July 9, 2014) ....................26, 27

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................19

*First Am. Title Ins. Co. of New York v. Fiserve Fulfillment Servs., Inc.*,
2008 WL 282019 (S.D.N.Y. Jan. 25, 2008) ....................14

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....................15, 29

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
774 N.E.2d 1190 (N.Y. 2002)....................27, 28

*Greene v. Clean Rite Ctrs., LLC*,
2024 WL 328436 (E.D.N.Y. Jan. 29, 2024) ....................28

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019)....................12

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................21, 22

*Kyszenia v. Ricoh USA, Inc.*,
583 F. Supp. 3d 350 (E.D.N.Y. 2022)....................27

*Leanos v. Better Home & Finance Holding Co.*,
2026 WL 962827 (N.D. Cal. Apr. 9, 2026)....................15, 16

*Matson v. Bd. of Educ.*,
631 F.3d 57 (2d Cir. 2011)....................11

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)....................14

*Mollett v. Netflix, Inc.*,
2012 WL 3731542 (N.D. Cal. Aug. 17, 2012), *aff'd*, 795 F.3d 1062 (9th Cir. 2015)....................22

*Morales v. Apple, Inc.*,
2023 WL 5579929 (S.D.N.Y. Aug. 29, 2023)....................23, 24

*Myers v. Wakefern Food Corp.*,
2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)....................27

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................18, 19

*Plusgrade L.P. v. Endava Inc.*,
2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023)....................12, 13

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016)....................26

*Small v. Lorillard Tobacco Co.*,
720 N.E.2d 892, 898 (N.Y. 1999)....................25

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025).................... *passim*

*Tab P'ship v. Grantland Fin. Corp.*,
866 F. Supp. 807 (S.D.N.Y. 1994)....................16

*Vaccariello v. XM Satellite Radio, Inc.*,
295 F.R.D. 62 (S.D.N.Y. 2013)....................25

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022)....................20

*Wright v. Publishers Clearing House, Inc.*,
372 F. Supp. 3d 61 (E.D.N.Y. 2019)....................25

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020)....................24

**Statutes**

N.Y. GEN. BUS. LAW § 672.................... *passim*

N.Y. GEN. BUS. LAW § 673....................22

N.Y. GEN. BUS. LAW § 675.................... 13, 14

N.Y. GEN. BUS. LAW § 349.................... *passim*

18 U.S.C § 2710.................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8....................1, 12, 13

Fed. R. Civ. P. 12....................11

*Terms of Service*, NBCUniversal, https://www.nbcuniversal.com/terms (last
visited April 27, 2026)....................7

## INTRODUCTION

Although ostensibly a standalone action, this case reflects Plaintiffs' counsel's third futile challenge to data-sharing practices related to certain NBC mobile applications. The effort began in October 2023, when Plaintiffs' counsel, representing Amma Afriyie and Roy Campbell, sued NBCUniversal Media, LLC ("NBCU") and Peacock TV, LLC on the same four claims asserted here—the federal Video Privacy Protection Act, 18 U.S.C § 2710 ("VPPA"), the New York Video Consumer Privacy Act, N.Y. GEN. BUS. LAW § 672 ("VCPA"), Section 349 of the New York Deceptive Trade Practices Act ("GBL § 349"), and unjust enrichment. Plaintiffs Afriyie and Campbell amended their complaint, defendants moved to dismiss it, and the Court granted that motion. Plaintiffs Afriyie and Campbell then sought leave to file a second amended complaint that overlaps substantially with the complaint here. In case the Court denied their motion to amend (it recently did), Plaintiffs' counsel preemptively filed their proposed complaint in *Afriyie*, with some modifications, as this standalone *Williams* complaint (the "Complaint"). Because the Complaint shares many of the flaws that felled the *Afriyie* complaint, and others, it must be dismissed.

To begin, the Complaint engages in rampant and improper group pleading. It fails to identify what conduct each Defendant engaged in, depriving each one of the required notice under Rule 8 about which theories of liability it must defend. As to Defendant Comcast Corporation ("Comcast"), for example, Plaintiffs only allege that it shares a corporate affiliation and some officers with NBCU. That does not negate the heavy presumption of corporate separateness or permit Plaintiffs to hold one legally distinct entity responsible for another's alleged conduct.

Next, all but one of Plaintiffs' claims are barred under the VPPA and VCPA's two-year statute of limitations, meaning that their derivative state-law claims also fail. The most recent specific date Plaintiffs (aside from Plaintiff Mikec) identify having used any relevant mobile

application was more than two years before September 13, 2025, when they filed their Complaint. Although Plaintiffs claim they could not have discovered their claims before September 13, 2025, they fail to allege any *facts* to support that conclusory assertion. Regardless, both NBCU's public disclosures and Plaintiffs' counsel's litigation history refute it.

On the merits, Plaintiffs' video privacy claims under the VPPA and VCPA fail. Plaintiffs do not allege that Defendants knowingly disclosed Plaintiffs' personally identifiable information, namely, information that an ordinary person—not a sophisticated technology company—could access and use to identify what videos an individual watched. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 52 (2d Cir. 2025). Device and user profile identifiers, as the *Afriyie* court held, do not identify an individual. And Plaintiffs allege no facts to support an inference that an email address categorically identifies a specific individual to an ordinary person. Although Plaintiffs allege that two applications have (at some point) disclosed a user's first and last name along with video viewing information to one of NBCU's service providers, they fail to adequately allege the circumstances of those disclosures or that those circumstances matched Plaintiffs' experiences.

Plaintiffs' other state law claims fail just as they did in *Afriyie*. The GBL § 349 claim largely duplicates Plaintiffs' video privacy claims, and Plaintiffs fail to plead several elements of the claim. The unjust enrichment claim is lifted verbatim from *Afriyie* and must be dismissed just as it was there.

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

## BACKGROUND

### I. The NBCU Apps

NBCU owns and operates several mobile applications ("apps"). Five of NBCU's current and former apps are at issue here: (i) the NBC App, (ii) the NBC News App, (iii) the MSNBC News App ("the MSNBC App"), (iv) the NBC Sports App, and (iv) the Bravo App (collectively, "The Subject Apps"). Compl. ¶ 2.[1]

The **NBC App** allows users to view video content from networks such as Bravo, E!, Oxygen, SYFY, USA, and Telemundo. *Id.* ¶ 114. Both iOS and Android users can download the App. *Id.* ¶ 115. Users allegedly must provide their name and email address to "subscribe" to the NBC App. *Id.*

The **NBC News App** allows app users to view video news, including "U.S. news, world news, business news, and health and culture news." *Id.* ¶ 124. To access NBC News App content, users allegedly must "subscribe" to the app using their name and email address. *Id.* ¶ 125.

The **MSNBC App** allows app users to view video content, including episodes of MSNBC shows. *Id.* ¶ 136. To access MSNBC App content, users allegedly must download the MSNBC App from Apple's App Store or the Google Play Store. *Id.* ¶ 137. Plaintiffs do not allege that users must "subscribe" to the MSNBC App, or provide their name and email address, to view video content on the MSNBC App.

The **NBC Sports App** allows app users to view video content, including highlights from sporting events. *Id.* ¶ 146. To access NBC Sports App content, users allegedly must download the NBC Sports App from Apple's App Store or the Google Play Store. Plaintiffs do not allege that

[1] Plaintiffs allege NBCU owns NBC News Digital LLC, which Plaintiffs claim developed the NBC News and MSNBC Apps. Compl. ¶¶ 1, 72. Together with Comcast, Plaintiffs refer to NBCU and NBC News Digital LLC as "NBC."

users must "subscribe" to the NBC Sports App, or provide their name and email address, to view video content on the NBC Sports App. To access additional, "locked" content, users must allegedly "subscribe" to the app by providing their name and email address. *Id.* ¶ 147.

The **Bravo App** allows app users to view videos from "Bravo-developed shows." *Id.* ¶ 156. To access such content, users allegedly must download the Bravo App from Apple's App Store or the Google Play Store. *Id.* ¶ 157. Plaintiffs do not allege that users must "subscribe" to the Bravo App or provide their name and email address to view video content on the Bravo App. To access additional, "locked" content, users must allegedly "subscribe" to the app by providing their name and email address. *Id.* ¶ 157.

## II. The mParticle SDK

Like most apps, the Subject Apps allegedly include software components known as software development kits ("SDKs") that assist in the Apps' operation. *E.g.*, Compl. ¶ 3. The only SDK about which Plaintiffs allege any facts is the mParticle SDK. That SDK allegedly supports IDSync, mParticle's "identity resolution" service. *Id.* ¶¶ 92, 96, 98. Plaintiffs allege that mParticle customers use that service to better understand their customers' experiences on their platforms. *Id.*

The Complaint alleges that each Subject App incorporates the mParticle SDK and, through it, transmits information to mParticle. *Id.* ¶ 106. Each App allegedly sends, in the "same transmission," information that (i) identifies a video a user has viewed on the App and (ii) other information that supposedly identifies the user. Table 1, below, summarizes the alleged substance of those alleged transmissions. The Complaint alleges someone captured the data reflected in screenshots of those transmissions "by intercepting transmissions to mParticle's servers," *e.g. id.* ¶ 117, but does not allege when the screenshots were taken, that they reflect what information was

shared with mParticle during all periods Plaintiffs used the Subject Apps, or even whose activity on the Subject Apps was being captured (although context indicates it was not Plaintiffs' activity).

**Table 1**

| App | Alleged video-identifying information transmitted | Alleged personally identifiable information transmitted | Plaintiffs who allegedly used the App |
|---|---|---|---|
| NBC App | Show<br>Episode Title<br>Season<br>Episode Number<br>Video Type<br>Video Duration<br>Video ID[2] | User First Name<br>User Last Name<br>User Zip Code<br>User Gender<br>User Email Address<br>Google advertising ID ("GAID").[3] | Williams<br>Warburton<br>Tobutis[4] |
| NBC News App | Video Title<br>Video Playlist Name<br>Video Program<br>Video GUID[5] | Adobe ECID<br>User Email Address<br>GPS Location (when location is enabled)[6] | Williams<br>Prevost[7] |
| MSNBC App | Video Program<br>Video Title<br>Video Air Date<br>Video Playlist Name<br>Video Length[8] | User Email Address | Prevost<br>Tobutis<br>Meketon<br>Mikec[9] |
| NBC Sports App | Episode Title<br>Video Title<br>Sport[10] | User Email Address<br>GAID[11] | Williams<br>Prevost<br>Warburton<br>Tobutis<br>Mikec[12] |
| Bravo App | Episode Title | User First Name | Warburton[15] |

[2] Compl. ¶ 118, Fig. 6.
[3] *Id.* ¶ 119, Fig. 7.
[4] *Id.* ¶¶ 11, 35, 46.
[5] *Id.* ¶ 128, Fig. 8.
[6] *Id.* ¶¶ 129-30, Figs. 9-10.
[7] *Id.* ¶¶ 12, 24.
[8] *Id.* ¶ 140, Fig. 11.
[9] *Id.* ¶¶ 25, 45, 55, 63.
[10] *Id.* ¶ 150, Fig. 13.
[11] *Id.* ¶ 151, Fig. 14.
[12] *Id.* ¶¶ 13, 23, 36, 47 64.
[15] *Id.* ¶ 37.

| | | | |
|---|---|---|---|
| | Show[13] | User Last Name<br>User Zip Code<br>User Gender[14] | |

The Complaint alleges no facts to support that a user's zip code, gender, Adobe ECID, or GAID alone identify a particular individual. The latter two are alphanumeric identifiers that mParticle must combine with other information it may have to potentially identify an individual. *See* Compl. ¶¶ 83, 119 n.6, 128. While the Complaint alleges that an email address "identifies a specific person *on its face*" (*id.* ¶ 5), it pleads no facts to support that conclusory assertion or that any Plaintiff's email address would identify the Plaintiff to an ordinary person.

While some Apps allegedly transmit a user's first and last name to mParticle, the Complaint alleges no facts concerning when and under what circumstances those transmissions occur and whether those circumstances matched certain Plaintiffs' experiences. The Figures in the Complaint allegedly depicting those transmissions are also redacted in relevant part (*see* Figs. 7, 16), but Plaintiffs have not moved to file the Complaint under seal. *Contra* C.J. Swain Individual Practice A.5.b.i (noting that email addresses "should be treated with caution and may warrant a motion for approval of sealed or redacted filing" and describing the requirements for such a motion).

The Complaint further alleges that mParticle maintains "user profiles" specific to App users; the profiles allegedly contain information mParticle receives from the Subject Apps through the mParticle SDK. Compl. ¶¶ 92, 102-03. mParticle assigns each user profile a unique, 64-bit-integer mParticle ID that serves as the "anchor" for the profile. *Id.* ¶ 97. Whenever mParticle receives additional information for that user, it allegedly adds it to the user profile. *Id.* ¶ 96. The Complaint alleges that Defendants can access mParticle user profiles associated with App users

[13] *Id.* ¶ 160, Fig. 15.
[14] *Id.* ¶ 161, Fig. 16.

and the information the Apps have transmitted through the mParticle SDK. *See id.* ¶ 99. It also suggests advertisers that use mParticle's services but are unaffiliated with Defendants may access that data. *See, e.g.*, *id.* ¶ 18 (alleging that "Plaintiff Williams' activity (including his video viewing history) across all NBC Apps" was "directly identifiable" to "any marketer who viewed his mParticle identity profile"). Plaintiffs allege no facts to support that (categorically false) speculation.

## III. NBCU Apps' Terms & Privacy Policy

Plaintiffs concede that the NBCU Terms of Service ("TOS") govern Plaintiffs' use of the Subject Apps. Plaintiffs expressly rely on the forum-selection and choice-of-law provisions within the TOS to argue that Plaintiffs properly sued Defendants in this Court and that New York law governs their state-law claims. *See* Compl. ¶¶ 78, 202. The TOS, in turn, expressly incorporate the NBCU Privacy Policy. Since the middle of 2018—the earliest any Plaintiff allegedly used a Subject App (*id.* ¶¶ 45-46)—the TOS have made clear that, by agreeing to the TOS, users also agree to NBCU's Privacy Policy.[16]

Also since mid-2018, the Privacy Policy has identified the information the Subject Apps collect and disclose, and for what purposes. The Privacy Policy effective as of May 25, 2018

---

[16] Decl. of Jeffrey Landis ("Landis Decl."), Ex. A ("Any personally identifiable information provided at points of registration on the Site will be subject to the NBCUniversal Web Site Privacy Policy."); *see also id.*, Ex. B ("When you use the NBCUniversal Services," defined to include "downloadable applications," "you agree to the collection, use, and sharing of your information as described in this Privacy Policy."); *Id.*, Ex. D ("These Terms are a contract between you and NBCUniversal. These Terms include our **Privacy Policy**, which is hereby incorporated by reference ('**Privacy Policy**'). Our Privacy Policy explains how we may collect, maintain and disclose data regarding you and others."); *Id.*, Ex. E. (same); *Id.*, Ex. F ("**BY USING THE NBCUNIVERSAL SERVICES, YOU ACCEPT AND AGREE TO BE BOUND AND ABIDE BY THESE TOS AND OUR PRIVACY POLICY**, which describes our privacy practices in detail and is incorporated herein by reference. Please read them carefully."). *See also Terms of Service*, NBCUniversal, https://www.nbcuniversal.com/terms (last visited April 27, 2026).

explained, for example, that Defendants "collect, use, and share information from or about you when you use our websites [and] downloadable applications . . . ." Landis Decl., Ex. B. It made clear that the NBCU Apps collect, among other data, "device information," including "your IP address," certain location information, "advertising identifiers," "device IDs," and "unique identifiers"—along with the "content you view." *Id.* Then, it disclosed that that information is shared with "Advertisers, Advertising Networks, and Other Third Parties." *Id.* Plaintiffs allege Defendants collected and used the at-issue data "for analytics, advertising, and improvement of their platforms, algorithms, and advertising services." Compl. ¶ 245. But the May 25, 2018 Privacy Policy disclosed exactly that. Landis Decl., Ex. B (Defendants share "information about how you use the NBCUniversal Services and interact with content or ads to better tailor services, products, marketing and advertising on our service or on third party platforms").

Later versions of the Privacy Policy and accompanying Cookie Notice reiterated and expanded on the above disclosures. The Privacy Policy as of June 15, 2020, for example, disclosed that NBCU collected contact information, such as name and address, and the purposes for that collection, including to "[p]rotect our users, Services, and properties." Landis Decl., Ex. C. The Policy also disclosed that NBCU collected "advertising and app identifiers." *See id.* And the Cookie Notice as of September 12, 2023 disclosed that NBCU and its affiliates, "[l]ike many companies," use "software development kits" among "other tracking technolog[ies]." *Id.*, Ex. H; *see also id.*, Ex. G at 2 (Privacy Policy as of September 12, 2023 disclosing use of SDKs).

**IV. Plaintiffs' Experiences**

Plaintiffs used different Apps at different times and in different ways. Plaintiffs allegedly viewed video content on the Apps they used, but no Plaintiff alleges they paid to use any App. Each Plaintiff alleges he or she was the only individual with access to their device. *See*

Compl. ¶¶ 14, 26, 38, 48, 56, 65. But they do not allege that they disclosed that information to Defendants, or that Defendants had any means to know that. The tables below (collectively, Table 2) summarize when and how each Plaintiff allegedly used the relevant Apps:

**Table 2**

| **NBC App** | | | |
|---|---|---|---|
| Plaintiff | Period Allegedly Used | Device Allegedly Used | Information Allegedly Provided When "subscribing" to App |
| Tobutis | Approximately middle of 2018 – unalleged (¶ 46) | Unalleged. *See* ¶ 48 (referencing "mobile devices") | Name and email address (¶ 46) |
| Warburton | Approximately June 2022 – unalleged (¶ 35) | iPhone (¶ 38) | Name and email address (¶ 35) |
| Williams | Fall 2020 – January 2023 (¶ 11) | iPhone (¶ 14) | Name and email address (¶ 11) |

| **NBC News App** | | | |
|---|---|---|---|
| Plaintiff | Period Allegedly Used | Device Allegedly Used | Information Allegedly Provided When "subscribing" to App |
| Prevost | "approximately 2019" – "sometime in 2021" (¶ 24) | Samsung Galaxy (¶ 26 n.1) | Name and email address (¶ 24) |
| Williams | May 2021 – unalleged (¶ 12) | iPhone (¶ 14) | Name and email address (¶ 12) |

| **MSNBC App** | | | |
|---|---|---|---|
| Plaintiff | Period Allegedly Used | Device Allegedly Used | Information Allegedly Provided When "subscribing" to App |
| Meketon | Approximately 2020 or 2021 – unalleged (¶ 55) | "Android devices" (¶ 46) | Name and email address (¶ 55) |
| Mikec | February 2024 – unalleged (¶ 62) | iPhone (¶ 65) | Name and email address (¶ 63) |
| Prevost | "some point in 2021" – some point in 2022 (¶ 25) | Samsung Galaxy (¶ 26 n.1) | Name and email address (¶ 25) |
| Tobutis | Approximately middle of 2018 – unalleged (¶ 45) | Unalleged. *See* ¶ 48 (referencing "mobile devices") | Name and email address (¶ 45) |

| **NBC Sports App** | | | |
|---|---|---|---|
| Plaintiff | Period Allegedly Used | Device Allegedly Used | Information Allegedly Provided When "subscribing" to App |
| Mikec | Approximately May 2024 – unalleged (¶ 64) | iPhone (¶ 65) | Name and email address (¶ 64) |
| Prevost | August or September 2020 – "sometime in 2022" (¶ 23) | Samsung Galaxy (¶ 26 n.1) | Name and email address (¶ 23) |
| Tobutis | Unalleged. *See* ¶ 47 (alleging Tobutis has been a "longtime subscriber") | Unalleged. *See* ¶ 48 (referencing "mobile devices") | Name and email address (¶ 47) |
| Warburton | Approximately June 2022 – unalleged (¶ 36) | iPhone (¶ 38) | Name and email address (¶ 36) |
| Williams | "Early 2023" – unalleged (¶ 13) | iPhone (¶ 14) | Name and email address (¶ 13) |

| **Bravo App** | | | |
|---|---|---|---|
| Plaintiff | Period Allegedly Used | Device Allegedly Used | Information Allegedly Provided When "subscribing" to App |
| Warburton | Approximately June 2022 – unalleged (¶ 37) | iPhone (¶ 38) | Name and email address (¶ 37) |

## V. Procedural History

Plaintiffs filed the Complaint on September 13, 2025. ECF No. 2. Three days later, Plaintiffs designated the case as related to *Afriyie v. NBCUniversal Media, LLC*, No. 1:24-cv-09433-LTS (S.D.N.Y.). The *Afriyie* plaintiffs had moved for leave to file a second amended complaint that would have included most of the *Williams* plaintiffs but none of the original *Afriyie* plaintiffs and many of the allegations that now appear in the *Williams* Complaint. *Afriyie*, ECF Nos. 60-62. The Court accepted the cases as related on September 18, 2025. The day before, Defendants waived service in *Williams*, which set their complaint-response deadline as November 17, 2025. ECF Nos. 9-11.

On November 5, 2025, Plaintiffs moved to consolidate *Williams* and *Afriyie*. ECF No. 17. On November 13, Defendants, with Plaintiffs' consent, moved to extend their complaint-response deadline in *Williams* pending the resolution of the motion to consolidate and the motion for leave to amend in *Afriyie*. ECF No. 18. The Court granted that request and, as relevant, set Defendants' deadline to respond to the *Williams* Complaint as 14 days from any denial of the motion to amend in *Afriyie*. ECF No. 19.

On March 30, 2026, the Court denied the *Afriyie* plaintiffs' motion to amend, holding that those plaintiffs lacked standing to substitute themselves with distinct plaintiffs who allegedly used different NBC applications than did the *Afriyie* plaintiffs. *Afriyie*, ECF No. 75. The Court denied Plaintiffs' motion to consolidate as moot and directed Defendants to respond to the *Williams* Complaint by April 13. ECF No. 24. At the parties' request, the Court extended Defendants' complaint-response deadline until April 27 and set a further briefing schedule on Defendants' motion to dismiss. ECF Nos. 25-26.

## **LEGAL STANDARD**

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although a court accepts as true a plaintiff's well pleaded factual allegations, it "need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (cleaned up). The court "may consider only

the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (cleaned up).

## ARGUMENT

### I. Plaintiffs' Complaint Violates Rule 8 Through Improper Group Pleading.

The Complaint must be dismissed because it fails to plead which Defendant engaged in which challenged conduct, in violation of Rule 8. Instead, Plaintiffs lump together all three Defendants as "NBC" and lodge virtually all their substantive allegations against that monolith. That is insufficient. *See Brown v. Dolce & Gabbana USA Inc.*, 2025 WL 1919549, at *8 (S.D.N.Y. July 11, 2025) (dismissing complaint when it "refer[red] to both D&G USA and D&G S.R.L. as 'Dolce & Gabbana' and attribute[d] all misconduct to this shared moniker, without differentiating what each entity did"); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming Rule 8 dismissal when complaint "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").

The few Defendant-specific allegations largely concern Defendants' alleged corporate affiliations, where they are based, and aspects of their terms. *See* Compl. ¶¶ 71-74, 78, 202, 205. While NBC News Digital LLC is allegedly "the app developer of the MSNBC App and the NBC News App," (*id.* ¶ 72), the Complaint is ambiguous about whether and to what extent Plaintiffs seek to hold that entity liable for conduct related to other Apps. Worse, Plaintiffs do not allege that Comcast engaged in any misconduct of its own and seemingly attempt to hold Comcast liable for other Defendants' conduct merely because it is allegedly those Defendants' ultimate parent and shares some officers. *See id.* ¶¶ 73-74. But absent "allegations that corporate formalities have been ignored, courts appropriately and routinely adhere to legal separateness." *Plusgrade L.P. v.*

*Endava Inc.*, 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023) (cleaned up). And that "two separate legal entities may have a corporate affiliation does not alter the Rule 8 pleading requirement that a defendant is entitled to notice of the claims brought against it." *Id.* at *5 (cleaned up).

Here, "[t]here are no allegations that corporate formalities have been ignored" at all, much less "as between *each and every* defendant, such that all defendants may joined for the purposes of group pleading." *Id.* "The existence of some overlapping officers and directors does not meet the mark." *Id.* Accordingly, the Complaint must be dismissed. *See id.* at *6 (granting motion to dismiss based on group-pleading defect).

## II. All But One of Plaintiffs' Claims Must Be Dismissed Because They Were Brought Outside the Statute of Limitations.

All Plaintiffs' video privacy claims, other than Plaintiff Mikec's, are barred by the VPPA and VCPA's two-year statute of limitations. Because those video privacy claims cannot proceed, neither can the derivative GBL § 349 and unjust enrichment claims. *See infra* at 23-29.

The VPPA requires that a civil plaintiff commence an action "within 2 years from the date of the act complained of or the date of discovery." 18 U.S.C § 2710(c)(3); N.Y. GEN. BUS. LAW § 675(3) (same under VCPA). Plaintiffs filed their Complaint on September 13, 2025. But the last specific date of use identified in the Complaint for each Plaintiff (other than Plaintiff Mikec) was ***more than two years*** before September 13, 2025:

**Table 3**

| App | Plaintiff(s) | Latest Specific Use Alleged | Two Years from Latest Use |
|---|---|---|---|
| NBC | • Williams<br>• Warburton<br>• Tobutis | • January 2023<br>• June 2022<br>• "Middle" of 2018 | • Jan. 2025<br>• June 2024<br>• "Middle" of 2020 |
| NBC News | • Williams<br>• Prevost | • May 2021<br>• "Sometime" in 2021 | • May 2023<br>• "Sometime" in 2023 |
| MSNBC | • Prevost | • Some point in 2022 | • "at some point" in 2023 |

| | | | |
|---|---|---|---|
| | • Tobutis<br>• Meketon | • "Middle" of 2018<br>• "Sometime" in 2021 | • "Middle" of 2020<br>• "Sometime" in 2023 |
| NBC Sports | • Williams<br>• Prevost<br>• Warburton<br>• Tobutis | • "Early" 2023<br>• "Sometime" in 2022<br>• June 2022<br>• None[17] | • "Early" 2025<br>• "Sometime" in 2024<br>• June 2024 |
| Bravo | • Warburton | • June 2022 | • June 2024 |

Put differently, the Complaint's own allegations show that these Plaintiffs commenced their actions more than two years after "the date of the act complained of." 18 U.S.C. § 2710(c)(3); N.Y. GEN. BUS. LAW § 675(3). That leaves only one path to timeliness: the "date of discovery." Plaintiffs must plausibly allege that they did not discover—or could not reasonably have discovered—the alleged violation before September 13, 2023. They do not.

A discovery-based limitations period begins to run when the plaintiff actually discovered, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010); *First Am. Title Ins. Co. of New York v. Fiserve Fulfillment Servs., Inc.*, 2008 WL 282019, at *5 (S.D.N.Y. Jan. 25, 2008) (similar under New York law). Here, a reasonably diligent plaintiff would have discovered the basis for the alleged video privacy violations before September 13, 2023 for two independent reasons.

***First***, NBCU's Privacy Policy and Cookie Notice put users on notice. The Privacy Policy in place on September 12, 2023, for example, disclosed that NBCU collected "name, email, [and] postal address," "[d]evice information and identifiers" such as "browser type . . . operating system, platform type, device type, and advertising and app identifiers," "[g]eolocation," "browsing

[17] Although the Complaint alleges Plaintiff Tobutis "used and uses" three Apps (¶ 48), the use of the present tense in one paragraph, unaccompanied by any facts concerning allegedly ongoing use, is insufficient.

activity," and "content you view and duration." Landis Decl., Ex. G.[18] The Policy also explained that NBCU collected such information to provide a "customized product experience," including "viewing and other content recommendations from NBCUniversal, [its] partners and other organizations," to send "NBCUniversal marketing and advertising," and to "[m]arket and advertise for third parties." *Id.* The Policy further disclosed that such information may be shared with "Advertisers, Advertising Networks and Other Third Parties" and "vendors" who perform services for NBCU including "research and analytics and identity management."[19] *Id.*

Beyond that, the Policy disclosed that the above information could be collected through "software development kits." *Id.* at 2. It explained that NBCU and its "service providers, advertisers, and other third parties" used SDKs "to recognize you on, off, and across NBCUniversal Services and your devices" and directed users to the Cookie Notice for more information. *Id*. The Cookie Notice, in turn, disclosed that the SDKs "collect data regarding your usage of and performance of the Services, apply market research to generate audiences, and measure the delivery and effectiveness of content and advertising." *Id.*, Ex. H. The Cookie Notice also addressed how users may opt out of the sharing of their information via tracking technologies. *See id.* Those disclosures were more than sufficient to put a reasonably diligent user on inquiry notice of the very conduct alleged here.

A court recently reached that exact conclusion in another data-privacy class action. In *Leanos v. Better Home & Finance Holding Co.*, the plaintiff alleged that a website unlawfully

---

[18] On Defendants' motion to dismiss, this Court may take judicial notice of archived webpages accessible through the Wayback Machine. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 165 n.14 (S.D.N.Y. 2023) (collecting cases).
[19] Even the May 25, 2018 privacy policy disclosed substantially all the information quoted from the September 12, 2023 version. *See supra* at 8; Landis Decl., Ex. B.

shared her personal and application data with third parties through tracking technologies. 2026 WL 962827, *1-2 (N.D. Cal. Apr. 9, 2026). The court rejected her reliance on delayed discovery in response to defendant's statute of limitations argument. The defendant's privacy policy—which disclosed the collection of personal and device information, the use of that data for marketing and analytics, and the sharing of information with third-party partners—"encompass[ed] the very conduct that forms the basis for Plaintiff's claims." *Id.* at *5. Because the policy was publicly available via a hyperlink on every page, it was "reasonably discoverable by Plaintiff in the exercise of due diligence, such that Plaintiff was chargeable with presumptive knowledge of its contents when she visited the Website in 2022." *Id.* at *6. So too here. NBCU's disclosures expressly notified users of the same categories of data collection and third-party sharing alleged here, foreclosing any assertion that the conduct could not have been discovered earlier.

***Second***, the *Afriyie* litigation confirms that at least Plaintiffs' counsel knew of NBCU's sharing of information with mParticle before September 13, 2023. The *Afriyie* Complaint was filed on October 26, 2023. *See Afriyie*, ECF No. 1 ("*Afriyie* Complaint"). But its allegations confirm that Plaintiffs' counsel knew of the alleged sharing with mParticle well before then. The *Afriyie* Complaint alleged that the earliest "Plaintiffs and Class members could have known about Defendants' conduct was shortly before the filing of this Complaint." *Afriyie* Compl. ¶ 109. But online material cited in the Complaint was "last visited August 1, 2023," indicating that "shortly before" was, at latest, August 1, 2023—and before the September 12, 2023 limitations cutoff applicable here. *See Afriyie* Compl. ¶¶ 54 n.15, 57 n.17, 59 n.18, 66 n.21, 73-77, nn. 22-34.

It is well settled that a plaintiff may not sit on his or her hands and wait to file a lawsuit. *Tab P'ship v. Grantland Fin. Corp.*, 866 F. Supp. 807, 811 (S.D.N.Y. 1994) ("The doctrines of inquiry notice and constructive knowledge evolved precisely to avoid tolling a statute for a

plaintiff's leisurely discovery of the full details of the alleged scheme.") (cleaned up). Yet that is exactly what occurred here. The *most recent* identified app use by any non-Mikec Plaintiff was "early 2023" (Williams)—nearly three years before he filed the Complaint. Compl. ¶ 13. Another Plaintiff (Prevost) allegedly stopped using the NBC News App "sometime in 2021"—*four years* before the Complaint was filed. *Id.* ¶ 24. The Complaint alleges no facts showing, in those intervening years, any reasonable diligence in investigating or pursuing these claims. Rather, other than swapping "personally identifiable information" for "PII," its tolling allegations are copied verbatim from the *Afriyie* Complaint, underscoring the absence of any Plaintiff-specific basis for delay. *Compare* Compl. ¶¶ 194-200 *with Afriyie* Compl. ¶¶ 106-113. Because the Complaint establishes both that the video privacy claims accrued outside the two-year period and that the alleged conduct was discoverable well before September 13, 2023, all the non-Mikec Plaintiffs' video-privacy claims are time-barred.

## III. Plaintiffs' VPPA Claim Fails.

### A. The Complaint Does Not Allege a Disclosure of PII.

Across the Subject Apps, the purportedly person-identifying information consists of advertising IDs and user-profile IDs ("AdID"), zip code, GPS, gender, email address, and first and last name. *See supra* at 5-6. The alleged disclosure of that information cannot support VPPA liability for a threshold reason: the Complaint fails to allege that an ordinary person could *access* the information, which was allegedly transmitted to mParticle through the mParticle SDK. *E.g.* Compl. ¶ 106. As the Second Circuit acknowledged in *Solomon*, an ordinary person's ability to access allegedly transmitted PII is an implicit requirement for liability. 136 F.4th at 54 ("Notably, the Complaint lacks any details about how an ordinary person might access the information on the

Pixel's PageView."). Plaintiffs allege no facts whatsoever to suggest that an "ordinary person" could access the code transmissions at issue.[20]

The alleged disclosures are also not actionable because they otherwise do not satisfy *Solomon*'s ordinary person test, Plaintiffs fail to allege sufficient facts about the nature of the disclosures, or both.

1. <u>AdId, Zip Code, GPS, and Gender Are Not PII Under Solomon.</u>

AdID, zip code, GPS, and gender do not constitute PII under binding Circuit precedent. In *Solomon*, the Second Circuit adopted the "ordinary person" standard for what constitutes PII under the VPPA. 136 F.4th at 52. PII encompasses information that "would, with little or no extra effort, permit an ordinary recipient to identify [a person's] video-watching habits." *Id.* at 54 (citation omitted). Applying that standard, the Court concluded the complaint failed to allege how an "ordinary person" could use a Facebook ID to identify the plaintiff, so affirmed the dismissal of the plaintiff's VPPA claim.

The same result is warranted here. The Complaint does not allege any facts establishing that an "ordinary person" could use an AdId, zip code, GPS, or gender to identify a specific person. Nor could it credibly do so. An "ordinary person" armed with the information "male," the zip-code "10001," the GPS coordinates 40.7145°N, 74.0035°W, or a nondescript alphanumeric AdID could not, with "little or no extra effort," identify an actual person. Multiple courts have found similar identifiers failed to meet the ordinary person standard. *See In re Nickelodeon Consumer*

[20] Rather, Plaintiffs allege that "deciphering the coding language that transmits users' personally identifiable information and video viewing history from NBC Apps to third parties ***requires advanced expertise***, ***beyond the scope of a reasonable consumer***." Compl. ¶ 196 (emphasis added). If true, then, as a matter of law, the information allegedly transmitted here was not PII under the ordinary person standard. If not, and a reasonable consumer could have deciphered the alleged code transmissions, that is further reason the non-Mikec Plaintiffs' claims are time barred. But Plaintiffs cannot have it both ways.

*Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (IP address, browser fingerprint, and unique device identifier like Android ID not VPPA PII); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (device serial number not VPPA PII). An AdId would not even constitute PII under the arguably less strict standard this Court applied in *Afriyie*, which predated *Solomon*. *See Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 809 (S.D.N.Y. 2025).

*Solomon* also forecloses any suggestion that AdId, zip code, GPS, and gender are PII simply because mParticle—a "sophisticated technology company," 136 F.4th at 52—can potentially "combine[]" those data points with other information it has to identify an individual. Compl. ¶ 213. *Solomon* expressly rejected a PII standard that "focuses on what a *recipient* can or cannot reasonably do when given personal information," since "[i]t does not make sense that a video tape service provider's liability would turn on circumstances outside of its control and the level of sophistication of the third party." 136 F.4th at 52, 54. But that is exactly what Plaintiffs' "combination" theory seeks to accomplish, contrary to *Solomon*. *See also Eichenberger*, 876 F.3d at 985 (VPPA "views disclosure from the perspective of the disclosing party," not "what the recipient of that information decides to do with it").

2. Email Addresses Are Not PII Under *Solomon*.

Plaintiffs fail to allege that email addresses are PII. While email addresses may *potentially* identify a person in some cases, that would only be "because of [the addresses'] content," to the extent they revealed "the account holder's name, affiliated organization, or other identifying information." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008–09 (7th Cir. 2019). After all, many email addresses do nothing to identify a person, like the Meg Ryan character's email address in the 1998 movie, You've Got Mail, shopgirl@aol.com. Here, Plaintiffs allege no facts to support a reasonable inference that, categorically, an ordinary person could use an email address to identify

a specific individual with little to no additional effort. Nor do they allege *any* facts about Plaintiffs' email addresses, including if they contain identifying information. Accordingly, Plaintiffs have failed to plead that email addresses are PII under *Solomon*. 136 F.4th at 52. *See also Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022) (unique user identification number not PII where it merely pointed to a "profile page, which may or may not contain various personal information about the user" and there were "no allegation[s] as to what information was actually included on [plaintiff's] profile nor how that information could be used by a third party to identify [plaintiff]").

3. <u>The Complaint's Allegations About First and Last Names Do Not Support Plaintiffs' VPPA Claim.</u>

The Complaint's allegations that two Apps (and only those two Apps) share users' first and last name with mParticle do not save Plaintiffs' VPPA claim. The factual bases for those allegations are screenshots showing alleged transmissions from the NBC App and Bravo App to mParticle that display the fields "User First Name" and "User Last Name" (though the substance of those fields is redacted). *See* Compl. ¶ 119, Fig. 7 (NBC App), ¶ 161 Fig. 16 (Bravo App). But those screenshots do not appear to reflect *Plaintiffs'* usage of the Apps and, as snapshots in time, also do not reflect what information was transmitted to mParticle during the periods the relevant Plaintiffs used the two Apps. For example, the alleged transmission offered for the NBC News App concerns a video about the shooting of Charlie Kirk that aired in September 2025. *See id.* ¶ 128, Fig. 8. But of the two Plaintiffs who allegedly used the NBC News App, one affirmatively alleges that they stopped using it 2021, *id.* ¶ 24, and the other alleges that they subscribed to the app in "May 2021" and used the app during that "period." *Id.* ¶¶ 12, 14. By all

indications, then, the screenshots reflect not Plaintiffs', but someone else's (most likely, Plaintiffs' counsel or their consultants'), App usage.[21]

Nor does the Complaint plead any facts about the circumstances under which name information is allegedly transmitted to mParticle, let alone that such circumstances matched Plaintiffs' experiences. For example, is name information only shared if someone watches a video during the same session that the user signs up for the app and provides their name, or every time? If the former, did the Plaintiffs who used the NBC and Bravo Apps watch a video under those circumstances? The Complaint is silent on those matters, even though Plaintiffs' counsel would have such information from their analysis of the Apps.

In sum, the Complaint alleges—at most—that at some point and under some unidentified circumstances, name information could be transmitted to mParticle. But that says nothing about whether Defendants disclosed *Plaintiffs'* PII for purposes of any VPPA claim.

### B. Plaintiffs Do Not Adequately Plead That Any Disclosure of PII Was Sufficiently "Knowing."

Even if the information allegedly disclosed was PII, Plaintiffs do not allege that Defendants *knowingly* disclosed PII to mParticle. Because only "knowing" disclosures of PII violate the VPPA, the VPPA claim fails for this reason too. 18 U.S.C. § 2710(b)(1).

To plead a "knowing" violation, a plaintiff must allege facts showing "that the video-service provider actually knew that it was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal.

[21] The point is generalizable across the Subject Apps. Plaintiffs provide no reasonable basis to infer that the various screenshots showing alleged code transmissions to mParticle accurately reflect what information was transmitted at the particular times Plaintiffs allegedly used the Apps (which stretch back several years in the past) or Plaintiffs' usage patterns.

2015). "[T]he term 'knowingly' connotes actual knowledge. It is not enough . . . that a disclosure be merely voluntary in the minimal sense of the defendant's being aware of what he or she is doing . . . and not act[ing] because of some mistake or accident." *Id.* at 1095 (cleaned up). Rather, "'knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code." *Id.* A plaintiff must also "allege facts giving rise to a reasonable inference that [the defendant] knowingly or willfully disclosed PII to someone other than the consumer." *Mollett v. Netflix, Inc.*, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012), *aff'd*, 795 F.3d 1062 (9th Cir. 2015).

Plaintiffs do not allege facts to support a knowing disclosure. For the NBC News, MSNBC, and NBC Sports Apps, Defendants would not know that if the information disclosed (*i.e.*, device identifiers, email addresses, and, potentially, GPS location data) would reveal to mParticle that a given user had requested or obtained identified video material. That would depend on whether mParticle had associated the disclosed material with the user's name (rather than a device or profile ID). But Plaintiffs allege no facts showing that Defendants had "actual knowledge" that mParticle had done so, or could, as to any of the Plaintiffs. Defendants also did not know *who* was using a specific device at the time a transmission was made. Although Plaintiffs allege only they had access to their devices, they do not allege how *Defendants* could have known that. Accordingly, Plaintiffs have failed to plead a knowing disclosure of PII.

## IV. Plaintiffs' VCPA Claim Fails.

Plaintiffs' VCPA claim fails for the same reasons as their VPPA claim. In *Afriyie*, the Court analyzed the VPPA and VCPA claims together, in part because "no court appears to have interpreted the VCPA's definition of [PII]." 775 F. Supp. 3d at 803. The same is true of the VCPA's knowledge requirement, which tracks the VPPA's. *Compare* 18 U.S.C. § 2710(b), *with* N.Y. GEN.

BUS. LAW §§ 673(1), 674(1). So, Defendants' arguments as to Plaintiffs' VPPA claim apply equally to the VCPA claim.

But the VCPA claim must be dismissed for a threshold reason: Defendants are not subject to the statute. Whereas the VPPA regulates "video tape service providers," meaning "any person, engaged in the business . . . of rental, sale, *or delivery* of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4) (emphasis added), the VCPA applies only to entities engaged in the first two of those businesses: video rentals and video sales. *See* N.Y. GEN. BUS. LAW § 672(4) (defining a "video tape service provider," as relevant here, as "any person engaged in the business of **rental** of prerecorded video cassette tapes or similar audio visual materials") (emphasis added); *Id.* § 672(5) (defining a "video tape seller," as relevant here, as "any person engaged in the business of **selling** prerecorded video cassette tapes or similar audio visual materials") (emphasis added). The VCPA includes no provision addressing businesses involved exclusively in the "delivery" of video materials to subscribers.

Here, Plaintiffs do not allege that Defendants "rent" or "sell" video materials. Accordingly, Defendants are neither "video tape service providers" nor "video tape sellers" under the VCPA, so cannot be liable under the Act.

## V. Plaintiffs' GBL § 349 Claim Fails.

GBL § 349 prohibits engaging in "deceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service in New York." *Morales v. Apple, Inc.*, 2023 WL 5579929, at *2 (S.D.N.Y. Aug. 29, 2023) (cleaned up). To state a claim, a plaintiff "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or

practice." *Id.* (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Plaintiffs' GBL § 349 claim fails in several respects.

**A. The GBL § 349 Claim Fails With Plaintiffs' Video Privacy Claims.**

Plaintiffs' GBL § 349 claim must be dismissed because it largely duplicates Plaintiffs' video privacy claims. Plaintiffs allege that Defendants engaged in deceptive conduct related to "(a) omissions of disclosures required under the VPPA, 18 U.S.C. § 2710(b)(2)(B) and NY VCPA, N.Y. GEN. BUS. LAW § 672(6) for the sharing of personally identifiable information and video viewing history" and "(b) failure to disclose its practice of sharing Plaintiffs' and Class members' personally identifiable information and video viewing histories to third parties, revealing the identity of individuals who watched specific videos." Compl. ¶ 234. Those were the exact theories of liability the *Afriyie* plaintiffs asserted and Court held were "indistinguishable from their VPPA and VCPA claims" and then dismissed as "duplicative" of the video privacy claims. *See* 775 F. Supp. 3d at 812 (citations omitted). The same result is warranted here.

Possibly to try to avoid *Afriyie*'s reach, Plaintiffs have added a third theory of purported Section 349 liability, that Defendants "collect[ed] and consolidate[ed] identifying data from Plaintiffs and Class members regardless of their device settings." Compl. ¶ 234. That theory—along with the first two—fails for several reasons discussed below.

**B. Plaintiffs Fail to Allege Materiality or Injury.**

Plaintiffs do not allege *facts* supporting their allegations that they "would not have used NBC's services, or would have paid less for such services (where applicable)" had they known about Defendants' data practices. Compl. ¶ 237; *see also id.* ¶ 240 (similar). Initially, no Plaintiff alleges that they paid for any services from any Defendant. Any suggestion, then, that Plaintiffs would have paid less for services that they did not pay for is nonsensical. *See Wright v. Publishers*

*Clearing House, Inc.*, 439 F. Supp. 3d 102, 114 (E.D.N.Y. 2020) (dismissing complaint that "lack[ed] any semblance of facts" illustrating that the plaintiffs paid a price premium).

New York's highest court has rejected Plaintiffs' other theory of injury, that they would not have used the Subject Apps had they known of Defendants' data practices. In *Small v. Lorillard Tobacco Co.*, the New York Court of Appeals described as "legally flawed" the plaintiffs' theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." 720 N.E.2d 892, 898 (N.Y. 1999). The "rationale" for that rule is that allegedly "deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 67–68 (E.D.N.Y. 2019) (citation omitted). So, "plaintiffs do not suffer a cognizable injury unless they can articulate an actual pecuniary harm, such as paying a higher price for the product than it was worth." *Id.* at 68. Plaintiffs, as discussed, fail to identify any such harm.[22]

Plaintiffs' new (relative to *Afriyie*) theory of Section 349 lability fares no better. Plaintiffs' alleged injury is that Defendants allegedly *shared* with third parties Plaintiffs' identifying information. *See* Compl. ¶ 237 (alleging Plaintiffs would have acted differently "had they known that NBC would **disclose** Plaintiffs' and Class members' [PII]") (emphasis added); *id.* ¶ 240 (alleging that Plaintiffs "have been injured" because they would have acted differently had they known that "their personally identifiable information and video viewing histories would be **shared**") (emphasis added). But the mere collection and consolidation of data, even if done

[22] To the extent this Court construes the Complaint as alleging that certain Plaintiffs continue to use the Apps currently, any such use (after Plaintiffs have learned of Defendants' alleged conduct) confirms that Defendants' alleged misrepresentations and omissions were not material. *Cf. Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 74 (S.D.N.Y. 2013).

without regard to device settings, does not establish the purported injury Plaintiffs assert. And no Plaintiff alleges that they enabled settings "(*e.g.*, 'Ask App Not to Track')[] or browsers settings" that were purportedly ignored or overridden by Defendants' challenged conduct. *Id.* ¶ 105. So, they cannot plausibly maintain that they were injured by the alleged collection or consolidation of identifying data "regardless of their device settings."[23]

### C. Plaintiffs Do Not Plead an Actionable Misrepresentation.

Plaintiffs also fail to state a GBL § 349 claim on a misrepresentation theory of liability. To do so, a plaintiff must first identify the alleged misrepresentation, then allege it was "inadequate, misleading, or false, and that she was injured as a result" of it. *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013).

Plaintiffs' claim does not get out of the gate. Plaintiffs' misrepresentation theory amounts to two unadorned references to "Defendants' representations" and "Defendants' deceptive representations." Compl. ¶¶ 237-38. Merely referencing alleged "misrepresentations" while "fail[ing] to describe them" does not "plausibly plead any misleading statements sufficient to survive a motion to dismiss." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 n.10 (S.D.N.Y. 2016) (citation omitted).

### D. Plaintiffs Do Not Plead an Actionable Omission.

Plaintiffs also fail to state an omission theory of liability. To do so, they may not simply point to the alleged omission; they must also "show why the omission was deceptive." *Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *13 (S.D.N.Y. July 9, 2014). That, in turn, requires them to "alleg[e] that the information omitted was solely within the defendant's possession or that

---

[23] For similar reasons, if no Plaintiff enabled do-not-track settings, the Complaint fails to allege how any alleged data collection and consolidation was at odds with such settings and, thus, deceptive.

a consumer could not reasonably obtain such information." *Id.* (cleaned up). *Accord Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022).

Plaintiffs do not even attempt to carry that burden. Regardless, NBCU's Privacy Policy disclosed all the alleged conduct at issue here. As discussed *supra*, for several years, it has identified (i) the information that the NBCU Apps collect (including device identifiers and the content users view), (ii) to whom that information is disclosed (including to advertisers, analytics companies, and other third parties), (iii) the purposes for those disclosures (including for analytics and targeted advertising), and (iv) how the collected and disclosed information is used, including to identify users across devices. Plaintiffs do not allege that they "could not reasonably obtain [this] information." *Kyszenia*, 583 F. Supp. 3d at 360. And the screenshots of alleged code transmissions to mParticle belie any allegation that the undisclosed information was solely within Defendants' possession.

Plaintiffs' omission theory based on Defendants' alleged failure to comply with the VPPA's and VCPA's statutory consent requirements fails too. Compl. ¶ 234(a). The challenged omission "must be inherently deceptive." *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *5 (S.D.N.Y. Mar. 1, 2022) (cleaned up). But Plaintiffs fail to allege how any alleged noncompliance with the VPPA and VCPA's consent regimes is "so inherently deceptive as to be misleading to a reasonable consumer," (*id.*), particularly given the robust disclosures in NBCU's Privacy Policy concerning collection and sharing of user information. Plaintiffs' omissions theory of § 349 liability fails.

**E. Plaintiffs Fail to Allege They Were Purportedly Deceived in New York.**

The GBL § 349 claim also fails because "the deception of a consumer must occur in New York," which Plaintiffs have failed to plead. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). That territorial requirement is satisfied if the deceptive transaction

occurred in New York. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013). Choice of law provisions that select New York law do not alone satisfy that requirement. *Greene v. Clean Rite Ctrs., LLC*, 2024 WL 328436, at *9 (E.D.N.Y. Jan. 29, 2024); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547–48 (S.D.N.Y. 2014). Nor do allegations about any party's residency or the fact that Defendants generally conduct business in the state. *Goshen*, 774 N.E.2d at 1196 ("[O]ur General Business Law analysis does not turn on the residency of the parties . . . . [and] was not intended to police the out-of-state transactions of New York companies[.]").

Here, Plaintiffs do not allege with any supporting facts that any alleged deception occurred in New York or that they entered any relevant transaction in New York. Plaintiffs allege generically that they "viewed videos in connection with transactions in 'business,' 'trade,' or 'commerce' within the meaning of GBL § 349" but fail to allege *where* those transactions occurred. Compl. ¶ 233. That is true for the three Plaintiffs who allegedly currently reside in New York, given that Plaintiffs fail to allege where those Plaintiffs resided (or transacted with Defendants) when they used the Subject Apps. *See* Compl. ¶¶ 10, 22, 34. *See Abraham*, 947 F. Supp. 2d at 234 (dismissing GBL § 349 claim even though plaintiff "is a New York resident"). And it is equally true for the three other Plaintiffs who currently reside in Texas and Pennsylvania. *See id.* ¶ 44, 54, 62. The mere allegation that "Defendants conducted business, trade, or commerce in New York State" (*id.* ¶ 232) is plainly insufficient under *Goshen*. 774 N.E.2d at 1196. Plaintiffs' Section 349 claim must be dismissed for this independent reason.

## VI. Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' claim for unjust enrichment repeats—verbatim—the unjust enrichment claim this Court dismissed in *Afriyie*, so must also be dismissed. *Compare Williams* Compl. ¶¶ 242-49, *with Afriyie* ECF No. 24. ¶¶ 157-164. The unjust enrichment claim "rests on the same allegedly

tortious conduct—Defendants' purported collection and disclosure of personally identifiable information and video viewing history—that Plaintiffs say violates the VPPA and VCPA." *Afriyie*, 775 F. Supp. 3d at 813. Accordingly, to the extent Plaintiffs' video privacy claims succeed, "the unjust enrichment claim is duplicative," and to the extent they fail, "an unjust enrichment claim cannot remedy the defects." *Id.* (quoting *Golden*, 688 F. Supp. 3d at 168) (cleaned up) (applying New York law). In either world, the unjust enrichment claim cannot stand.

## CONCLUSION

Because Plaintiffs fail to plausibly plead any of their claims, this Court should dismiss the Complaint with prejudice.

Dated: April 27, 2026

Respectfully submitted,

By: /s/ *Jeffrey Landis*

Jeffrey Landis
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
Email: jeff@zwillgen.com

Sudhir V. Rao
ZWILLGEN PLLC
183 Madison Avenue, Suite 1601
New York, NY 10016
Telephone: (646) 362-5590
Email: sudhir.rao@zwillgen.com

Benjamin S. Thomassen (*pro hac vice* forthcoming)
ZWILLGEN PLLC
One North LaSalle St. Suite 4600
Chicago, IL 60602
Telephone: (312) 685-2278
Email: ben.thomassen@zwillgen.com

**LOCAL CIVIL RULE 7.1(c) CERTIFICATION**

I hereby certify that this memorandum contains 8,739 words, in compliance with Local Civil Rule 7.1(c) and this Court's Individual Practice Rule A.2(h).

Dated: April 27, 2026

By: /s/ *Jeffrey Landis*
Jeffrey Landis