**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

MICHAEL WILLIAMS, KELLIE PREVOST, SCOTT WARBURTON, DEMETRIA TOBUTIS, RICHARD MEKETON, and LISA MIKEC, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NBCUNIVERSAL MEDIA, LLC, NBC NEWS DIGITAL LLC, and the COMCAST CORPORATION,

Defendants.

Case No. 1:25-cv-07614-LTS-VF

Hon. Laura Taylor Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................................... 2

III. LEGAL STANDARD ............................................................................................... 4

IV. ARGUMENT ........................................................................................................... 4

A. The Complaint Satisfies Rule 8's Pleading Requirements ..................................... 4

B. Plaintiffs' VPPA and VCPA Claims Are Timely ..................................................... 6

i. The Delayed Discovery Rule and Fraudulent Concealment Doctrine Apply. 6

ii. Defendants' Privacy Policies Do Not Put Plaintiffs on Inquiry Notice .......... 8

iii. Counsel's Pre-Retention Knowledge in *Afriyie* Is Not Imputed to Plaintiffs. 9

iv. Plaintiffs Warburton, Tobutis, Meketon, and Mikec's Claims Are Tolled Under the Continuing Violations Doctrine ........................................................... 10

C. Plaintiffs State a Claim Under VPPA and VCPA ................................................ 11

i. The Video-Viewing History Defendants Disclosed Is Identifiable ............. 11

ii. Defendants Knowingly Disclosed PII to Third Parties ............................... 17

iii. Defendants Are "Video Tape Service Providers" and Subject to the VCPA 19

D. Plaintiffs State a Claim Under GBL § 349 ......................................................... 20

i. Plaintiffs Adequately Plead NBC's Deceptive Conduct ............................. 20

ii. Plaintiffs Adequately Plead Materiality and Injury .................................... 22

iii. Plaintiffs Demonstrate the Territoriality Element of GBL § 349 ................. 25

iv. Plaintiffs' GBL Claims Are Not Duplicative of Their VPPA/VCPA Claims.26

E. Plaintiffs State an Unjust Enrichment Claim ....................................................... 27

V. CONCLUSION ....................................................................................................... 28

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*4 K & D Corp. v. Concierge Auctions, LLC*,
2 F. Supp. 3d 525 (S.D.N.Y. 2014) ..... 26

*Abraham v. Am. Home Mortg. Servic*ing, Inc.,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ..... 25

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025) ..... 11, 14, 26

*Aldana v. GameStop, Inc.*,
No. 1:22-CV-7063, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ..... 13, 17, 18

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ..... 5

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ..... 27

*Bose v. Interclick, In*c.,
No. 1:10-CV-09183, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ..... 23

*Brown v. Dolce & Gabbana USA Inc.*,
No. 1:24-cv-03807, 2025 WL 1919549 (S.D.N.Y. July 11, 2025) ..... 5

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 9

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ..... 15

*Caufield v. Colgate-Palmolive Co.*,
No. 1:16-cv-04170, 2017 WL 744600 (S.D.N.Y. Feb. 24, 2017) ..... 10

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ..... 25

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ..... 12

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 24

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ........ 25

*Czarnionka v. Epoch Times Ass'n, Inc.*,
No. 1:22-cv-06348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ........ 18

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ........ 13

*Diaz v. Paragon Motors of Woodside, Inc.*,
424 F. Supp. 2d 519 (E.D.N.Y. 2006) ........ 22

*Dimond v. Darden Rests., Inc.*,
No. 1:13-CV-05244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ........ 21

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 6

*Doe v. GoodRx Holdings, Inc.*,
No. 4:23-CV-00501, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 6

*Doe v. Sigma Chi Int'l Fraternity, Inc.*,
No. 5:23-CV-1452, 2025 WL 2203001 (N.D.N.Y. Aug. 4, 2025) ........ 5

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 14, 16, 17

*Fargas v. Cincinnati Mach.*, LLC,
986 F. Supp. 2d 420 (S.D.N.Y. 2013) ........ 11

*Franklin v. Gen. Mills, Inc.*,
No. 2:21-cv-01781, 2025 WL 2614970 (E.D.N.Y. Sept. 10, 2025) ........ 12

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ 6

*Gaidon v. Guardian Life Ins. Co. of Am.*,
94 N.Y.2d 330 (N.Y.1999) ........ 20

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015) ........ 4

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ........ 17, 19, 20

*Goshen v. Mut. Life Ins. Co. of New York*,
774 N.E.2d 1190 (N.Y. App. 2002) ........ 26

*Greene v. Clean Rite Ctrs., LLC*,
714 F. Supp. 3d 134 (E.D.N.Y. 2024) ........ 26

*Gutierrez v. Lemonade, Inc.*,
No. 1:21-CV-07070, 2022 WL 3214852 (S.D.N.Y. Aug. 9, 2022) ........ 26

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ........ 18

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015) ........ 11

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
37 N.Y.3d 169 (2021) ........ 21

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ........ 9

*In re Hain Celestial Heavy Metals Baby Food Litig.*,
No. 2:21-cv-00678, 2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024) ........ 22

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ 19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ........ 23

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 25

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 14, 16, 17

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 914 (9th Cir. 2015) ........ 19

*In re Optimal U.S. Litig.*,
837 F. Supp. 2d 244 (S.D.N.Y. 2011) ........ 5

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) ........ 6

*In re Smartphone Geolocation Data Application*,
977 F. Supp. 2d 129 (E.D.N.Y. 2013) ........ 14

*Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
340 F. Supp. 3d 285 (S.D.N.Y. 2018) ........................................................................ 7

*Kane v. Univ. of Rochester*,
No. 6:23-CV-06027, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........................... 20, 23, 27

*Kyszenia v. Ricoh USA, Inc.*,
583 F. Supp. 3d 350 (E.D.N.Y. 2022) ........................................................................ 21

*Leanos v. Better Home & Fin. Holding Co.*,
No. 25-cv-07893, 2026 WL 962827 (N.D. Cal. Apr. 9, 2026) ........................................ 9

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ...................................................................... 13

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025) ................................................................... 14, 17

*McAferty v. Musk*,
795 F. Supp. 3d 949 (W.D. Tex. 2025)....................................................................... 23

*McArdle-Bracelin v. Cong. Hotel, LLC*,
No. 1:20-CV-861, 2022 WL 486805 (N.D.N.Y. Feb. 17, 2022) ........................................ 4

*Media Queue, LLC v. Netflix, Inc.*,
672 F. Supp. 2d 1022 (N.D. Cal. 2009) ..................................................................... 20

*Meyerson v. Prime Realty Services, LLC*,
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ..................................................................... 24

*Mollett v. Netflix, Inc.*,
No. 5:11–CV–01629, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ..................................... 19

*Myers v. Wakefern Food Corp.*,
No. 7:20-CV-08470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ........................................... 21

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) ...................................................................................... 22

*Ortiz v. Consol. Edison Co. of New York, Inc.*,
801 F. Supp. 3d 260 (S.D.N.Y. 2025) ........................................................................ 4

*Palma-Castillo v. New Tacolandia Inc.*,
No. 1:09-cv-10374, 2011 WL 7092652 (S.D.N.Y. May 9, 2011) ........................................... 12

*Pellegrino v. Procter & Gamble Co.*,
No. 7:23-CV-10631, 2026 WL 880573 (S.D.N.Y. Mar. 31, 2026) .................................... 20, 21

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024) ........................................................................................ 7

*Plusgrade L.P. v. Endava Inc.*,
No. 1:21-CV-1530, 2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) ............................................ 5

*Polk v. Del Gatto, Inc.*,
No. 1:21-CV-00129, 2021 WL 3146291 (S.D.N.Y. July 23, 2021) ......................................... 25

*Pub. Employees' Ret. Sys. of Mississippi v. Goldman Sachs Grp., Inc.*,
280 F.R.D. 130 (S.D.N.Y. 2012) ........................................................................................ 9

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
No. 12-CV-6383, 2025 WL 948111 (E.D.N.Y. Mar. 28, 2025) ................................................ 6

*Small v. Lorillard Tobacco Co.*,
720 N.E.2d 892 (N.Y. 1999) ........................................................................................... 23

*Smith v. Trinity Broad. of Texas, Inc.*, No. 8:24-cv-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024)............................................................................................... 12

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ................................................................... 13, 14, 15, 16

*Stanley v. Direct Energy Servs., LLC*,
466 F. Supp. 3d 415 (S.D.N.Y. 2020) ................................................................................ 10

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................................................... 27

*Suarez v. California Nat. Living, Inc.*,
No. 7:17-CV-09847, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) .......................................... 20

*Sutton v. TED Found., Inc.*,
No. 1:23-cv-09219, 2026 WL 207000 (S.D.N.Y. Jan. 27, 2026)................................ 11, 12, 13

*Tab P'ship v. Grantland Fin. Corp.*,
866 F. Supp. 807 (S.D.N.Y. 1994) ..................................................................................... 10

*Vaccariello v. XM Satellite Radio, Inc.*,
295 F.R.D. 62 (S.D.N.Y. 2013) ........................................................................................... 24

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
No. 1:13-CV-07639, 2015 WL 4040882 (S.D.N.Y. July 2, 2015) ............................................ 4

*Ward v. TheLadders.com, Inc.*,
3 F. Supp. 3d 151 (S.D.N.Y. 2014) ..................................................................................... 25

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) ............................................................................ 14

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ........................................................................ 23

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482, 486 (1st Cir. 2016) .............................................................................. 14

**STATUTES**

15 U.S.C.A. § 6501(8)(c)............................................................................................. 13

18 U.S.C. § 2710.......................................................................................................... 15

18 U.S.C. § 2710(a)(4).................................................................................................. 19

42 U.S.C. § 1320d(6) .................................................................................................... 13

Cal. Civ. Code § 1798.140(v)(1).................................................................................... 13

**REGULATIONS**

45 C.F.R. § 164.514 ...................................................................................................... 13

**OTHER AUTHORITIES**

S. Rep. 100-599...................................................................................................... 15, 16

## I. INTRODUCTION

This case concerns the unlawful intrusion into the privacy of Americans' viewing habits for corporate gain. Plaintiffs allege that defendants—NBCUniversal Media, LLC, NBC News Digital LLC, and the Comcast Corporation (together, "NBC" or "Defendants")—collected Plaintiffs' private and individually identifiable data, which Plaintiffs shared with Defendants in good faith as part of an account registration and use process, and then disclosed that data to third parties, without consent and against Plaintiffs' reasonable expectations, alongside information that identifies which videos Plaintiffs watched. This conduct unambiguously violates the law. In their Motion to Dismiss, *see* ECF Nos. 30-32, Defendants attempt to distract the Court from their violations of federal and New York state law. However, Defendants' arguments about group pleading, the statute of limitations, the nature of the disclosed information, and the technicalities of New York statutes, are insufficient and cannot shield them from liability.

Defendants' statute of limitations argument, for instance, relies on a novel theory that counsel's knowledge in the prior *Afriyie* action can be imputed to the individual Plaintiffs named here. This argument finds no support in the law and fails as a factual matter. Even treating the filing of the *Afriyie* complaint in October 2023 as the earliest discovery date, Plaintiffs' September 2025 Complaint falls within the two-year limitations period. Defendants' separate contention that their privacy policies put Plaintiffs on inquiry notice is equally unavailing. Those policies never disclosed that Defendants transmitted personally identifiable information ("PII") together with video-viewing data. Indeed, several policies stated that only "hashed or masked" identifiers would be shared, or that video-viewing data would not be disclosed without "consent."

Defendants' group pleading argument also lacks support. The Complaint identifies which entity developed which apps, NBC News Digital LLC's ("NBC Digital") relationship to

NBCUniversal Media, LLC ("NBCUniversal") and its apps, and that Comcast Corporation ("Comcast") provides direct oversight and has an overlapping structure with NBCUniversal. These are precisely the kinds of allegations courts in this District have found sufficient to satisfy Rule 8.

Defendants' merits challenges fare no better. Their claim that an "ordinary person" cannot read fields labeled "show title" and "episode title" or full names, email addresses, GPS coordinates, and zip codes written in plain English defies credibility and the law. No technical expertise is required to understand that "Jane Doe" watched "The Pitt, Season 1, Episode 2."

Finally, Defendants' challenges to Plaintiffs' GBL § 349 and unjust enrichment claims should also be rejected. The GBL § 349 claim is not duplicative because it addresses Defendants' deceptive omissions and use of Plaintiffs' data to build identity profiles. And Plaintiffs plead materiality and injury by alleging they would not have used Defendants' services had they known of the undisclosed practices and that their valuable data was misappropriated. Meanwhile, the unjust enrichment claim is the only claim that captures Defendants' ongoing monetization of Plaintiffs' data and is therefore not redundant.

The Complaint should be sustained in its entirety.

## II. FACTUAL BACKGROUND

Defendants own and operate the NBC App, the NBC News App, the MSNBC App, the NBC Sports App, and the Bravo App (collectively, the "NBC Apps"), all of which provide prerecorded video streaming content. ¶¶ 2, 71-72.[1] Millions of U.S. viewers—including Plaintiffs—subscribe to the NBC Apps to watch these videos. ¶¶ 2, 109. To subscribe to the NBC Apps, users provide directly identifying personal information, including their full name and email address. ¶¶ 115, 125, 137, 147, 157.

[1] "¶" or "Complaint," as used herein refers to Plaintiffs' Class Action Complaint, ECF No. 2.

Each NBC App incorporates the mParticle SDK. mParticle is an "identity service provider" whose core business model is to identify and profile individuals across the internet for targeted advertising. ¶¶ 85-89, 91-92. Consistent with this purpose, Defendants incorporated the mParticle SDK to disclose Plaintiffs' and Class Members' PII with video-viewing data. ¶¶ 96, 106. This conduct was intentional, as it was Defendants who configured the mParticle SDK to transmit the exact data points identified in the Complaint. ¶¶ 7, 98.

Plaintiffs' testing revealed the following PII and video-viewing data was disclosed when Plaintiffs used the following apps:

| NBC Apps | Video Information Transmitted | Identifying PII Transmitted | Complaint ¶¶ | Plaintiffs |
|---|---|---|---|---|
| NBC App | Show Title<br>Episode Title<br>Season Number<br>Episode Number<br>Video Type<br>Video Duration<br>Video ID | User First Name<br>User Last Name<br>Email Address<br>User Email Status<br>User Zip Code<br>User Gender<br>Google Advertising ID (GAID) | ¶¶ 117-21<br>Figs. 6-7 | Williams<br>Warburton<br>Tobutis |
| NBC News App | Video Title<br>Video Playlist Name<br>Video Playlist ID<br>Video Clip Category<br>Video Program<br>Video GUID | Email Address<br>GPS Location<br>Adobe ECID | ¶¶ 127-33<br>Figs. 8-10 | Williams<br>Prevost |
| MSNBC App | Video Title<br>Video Playlist Name<br>Video Playlist ID<br>Video Clip Category<br>Video Program<br>Video GUID<br>Video Air Date<br>Video Length | Email Address | ¶¶ 139-43<br>Figs. 11-12 | Prevost<br>Tobutis<br>Meketon<br>Mikec |
| NBC Sports App | Episode Title<br>Video Title<br>Video Type | Email Address<br>GAID | ¶¶ 149-53<br>Figs. 13-14 | Williams<br>Prevost<br>Warburton |

| NBC Apps | Video Information Transmitted | Identifying PII Transmitted | Complaint ¶¶ | Plaintiffs |
|---|---|---|---|---|
| | Sport<br>League | | | Tobutis<br>Mikec |
| Bravo App | Show Title<br>Episode Title<br>Sport<br>League<br>Duration | User First Name<br>User Last Name<br>Email Address<br>User Email Status<br>User Zip Code<br>User Gender | ¶¶ 159-64<br>Figs. 15-16 | Warburton |

Plaintiffs neither knew about nor consented to these transmissions (*see* ¶¶ 7, 21, 33, 43, 53, 61, 70, 167-172, 237-240), nor could they opt out. *See* ¶¶ 105, 122, 134, 144, 154, 165.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

## IV. ARGUMENT

### A. The Complaint Satisfies Rule 8's Pleading Requirements

There is no "group pleading" issue here. *See* Defs.' Mot. to Dismiss ("Motion" or "Mot."), ECF No. 31 at 12. "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *See Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 1:13-CV-07639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). "As long as the plaintiff gives a factual basis for the joint activity by the defendants," Rule 8 is met. *See McArdle-Bracelin v. Cong. Hotel, LLC*, No. 1:20-CV-861, 2022 WL 486805, at *7 (N.D.N.Y. Feb. 17, 2022).

Plaintiffs satisfy this standard by alleging the relationships among Defendants, the apps at

issue, and facts showing Defendants "acted in concert to violate [Plaintiffs'] rights." *See Ortiz v. Consol. Edison Co. of New York, Inc.*, 801 F. Supp. 3d 260, 296 (S.D.N.Y. 2025); *Doe v. Sigma Chi Int'l Fraternity, Inc.*, No. 5:23-CV-1452, 2025 WL 2203001, at *9 (N.D.N.Y. Aug. 4, 2025) (no improper group pleading where the complaint describes "the relationships between the [] defendants" and "each [] defendant's individual role in [the] alleged injury"). Specifically, Plaintiffs allege which Defendants developed which apps (¶¶ 71, 72), that NBC Digital acted in concert with NBCUniversal, and that Comcast exercised direct oversight of NBCUniversal through overlapping leadership structure. ¶¶ 71, 72, 74.

Defendants' contention that it is "ambiguous" how Plaintiffs seek to hold a Defendant liable for "other Apps" (Mot. at 12) it did not develop ignores these allegations of concerted action. *See* ¶¶ 71-74. Defendants also claim Plaintiffs seek to hold Comcast liable just because it is the "ultimate parent" (Mot. at 12), but that again contradicts Plaintiffs' well-pled allegations, which do not turn on Comcast's position as corporate parent, but rather Comcast's direct oversight over NBCUniversal and NBC Digital and thus the actions underlying Plaintiffs' claims. *See* ¶¶ 73-74; *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 264 (S.D.N.Y. 2011) (sustaining claim where "plaintiffs do not simply aver" the parent is liable "because of its corporation relationship" but alleged "a plausible inference that [the parent] actively oversaw the process").

Defendants' reliance on *Brown v. Dolce & Gabbana USA Inc.*, No. 1:24-cv-03807, 2025 WL 1919549 (S.D.N.Y. July 11, 2025) and *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) (Mot. at 12) is misplaced, as those complaints made no effort to identify which defendants did what or how they acted jointly. *See Brown*, 2025 WL 1919549, at *8 (plaintiff "attributes all misconduct" to all defendants "without differentiating what each entity did"); *Atuahene*, 10 F. App'x at 33 (failing to "distinguish [defendants'] conduct"). *Plusgrade L.P. v. Endava Inc.*

similarly does not support Defendants' arguments because those plaintiffs relied exclusively on "a corporate affiliation" and "some overlapping officers and directors," No. 1:21-CV-1530, 2023 WL 2402879, at *5 (S.D.N.Y. Mar. 8, 2023), whereas Plaintiffs here allege the President of Comcast directly oversees NBCUniversal's leadership team and Comcast is the "operator of NBC Universal" and NBC Digital. ¶ 74.

### B. Plaintiffs' VPPA and VCPA Claims Are Timely

#### i. The Delayed Discovery Rule and Fraudulent Concealment Doctrine Apply

The discovery rule provides that "[t]he clock begins to run when the plaintiff discovers or should have discovered the injury." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, No. 12-CV-6383, 2025 WL 948111, at *6 (E.D.N.Y. Mar. 28, 2025). When Plaintiffs discovered or should have discovered their claims is a fact-intensive inquiry inappropriate for resolution at the motion to dismiss stage. *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 385 (S.D.N.Y. 2015).

Even if the Court were to consider the issue now, courts have routinely refused to dismiss claims on statute of limitations grounds where defendants surreptitiously incorporated tracking technology to disclose consumers' private data. *See Doe v. GoodRx Holdings, Inc.*, No. 4:23-CV-00501, 2025 WL 2052302, at *10 (N.D. Cal. July 22, 2025) (allegations that defendant "secretly incorporated" similar software trackers to disclose data to third parties sufficient to invoke discovery rule); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (similar). Here, Plaintiffs allege they could not have discovered Defendants' conduct because (1) "no disclosures" informed consumers that Defendants would disclose their identifiable video-viewing history; (2) the disclosure occurred through "highly technical" surreptitious technology hidden in the background; and (3) uncovering this technology requires "advanced expertise" "beyond the scope of a reasonable consumer." ¶¶ 194-200. This is sufficient to withstand a timeliness challenge. *See Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 869 (N.D. Cal. 2025) (applying discovery

rule where plaintiff "[did] not have the technical knowledge necessary to test" the alleged tracking).

Similarly, a plaintiff sufficiently pleads fraudulent concealment by alleging (1) defendant's concealment; (2) that they "remained in ignorance" of their cause of action; and (3) that the continued ignorance was not caused by a "lack of diligence." *See Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 333 (S.D.N.Y. 2018). Plaintiffs allege Defendants' misconduct is inherently self-concealing, such that Plaintiffs could not, and did not, learn of Defendants' wrongdoing despite their diligence. *See* ¶ 96 (describing how mParticle transmission occurs in the background undetectable by consumers); ¶ 195 (SDKs "secretly incorporated" by Defendants); *Iowa Pub. Employees' Ret. Sys.*, 340 F. Supp. 3d at 334 ("an inherently self-concealing" misconduct "discharges Plaintiffs' burden to plead concealment"); *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 613 (2d Cir. 2024) (fraudulent concealment where misconduct was "practically undetectable" and plaintiff's ignorance was "plausibly attributable to the difficulty in discerning" the misconduct).

**ii. <u>Defendants' Privacy Policies Do Not Put Plaintiffs on Inquiry Notice</u>**

Defendants contend that their privacy policies and notices would have put Plaintiffs on inquiry notice (*see* Mot. at 7-8, 15-16), but none of the eight Terms of Use, Privacy Policy, and Cookie Notice documents Defendants submitted[2] disclose (1) their use of mParticle SDKs; (2) their disclosure of directly identifiable PII; or (3) the disclosure of identifiable video-viewing history. Several policies mislead users into thinking they would not disclose this data at all.

[2] Plaintiffs dispute that their lawyers' reliance on the choice-of-law and choice-of-forum provisions in an unidentified version of the Terms of Service in identifying where to file this action subjects them to all versions of the terms and privacy policies Defendants submitted. *See* Mot. at 7. Defendants cite no authority for this proposition, nor have Defendants shown how these policies were presented to Plaintiffs and thus cannot meet their burden of establishing assent.

**May 2018 Privacy Policy.** The May 2018 Privacy Policy states that Defendants may share non-descript "information" about "interact[ions] with content or ads" to "better tailor services, products, marketing and advertising." ECF No. 32-2. Nothing in this statement discloses that Defendants share directly identifiable PII, such as full name, email address, and GPS location, alongside specific video-viewing history, with third parties. *Id*. This omission is especially misleading given that the next paragraph states Defendants may share only "a hashed or masked identifier" with third parties, creating the impression that no other identifying information would be shared. *Id*. This policy does not identify mParticle at all, nor its use of NBC App users' PII for comprehensive profiling. *Id*.

**June 2020 & December 2022 Privacy Policies.** The June 2020 and December 2022 Privacy Policies are substantially similar and share the same flaws as the May 2018 Privacy Policy. *See* ECF Nos. 32-3, 32-7. They state only that Defendants will share data like "demographics information" and "device information"—not directly identifiable PII such as names and email addresses. *Id.* They did not disclose that they share identifiable video-viewing data consistent with the VPPA's requirements.

Indeed, under the heading "Other Sharing," these Defendants promised users that they would not share video-viewing history without "*your appropriate consent* when required, and consistent with applicable law." *Id.* Yet Defendants did not attempt to obtain consent in the form required by the VPPA/VCPA. ¶ 214. Thus, users could not (and did not) agree to Defendants sharing this data.

**February 2023 Cookie Policy.** The February 2023 Cookie Policy fares no better. ECF No. 32-8. It makes no mention of mParticle or its SDK and instead focuses on "cookies," discussing generally the collection of "browsing habits" and "usage of and performance of the Services."

Nothing discloses that NBC App users' PII with specific video-viewing history is shared with mParticle.[3]

Courts have found similarly vague and misleading policy statements insufficient to trigger inquiry notice. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070-71 (N.D. Cal. 2021) ("misleading partial disclosure[s]" do not trigger obligation to "investigate their claims"); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 863 (N.D. Cal. 2020) (rejecting statute of limitations challenge given defendants' "[H]alf-truth[]" representations omitting information "necessary to prevent misleading others.").

*Leanos v. Better Home & Fin. Holding Co.*, No. 25-cv-07893, 2026 WL 962827, at *5 (N.D. Cal. Apr. 9, 2026), which Defendants rely on (Mot. at 15-16), is inapposite because the privacy policies there disclosed that the defendant uses "third-party cookies to serve targeted advertisement"—"the very conduct that forms the basis for Plaintiff's claims." Defendants' privacy policies here never reveal that they disclose video-viewing data along with directly identifiable PII like name and email to third parties. *See* Section IV.B.ii, above.

**iii. <u>Counsel's Pre-Retention Knowledge in *Afriyie* Is Not Imputed to Plaintiffs</u>**

Defendants next seek to impute counsel's pre-retention knowledge from the *Afriyie* investigation to Plaintiffs. *See* Mot. at 16-17. This argument fails for two reasons.

First, even if counsel's knowledge could be imputed to Plaintiffs (and it cannot), Plaintiffs filed this action within two years of the *Afriyie* Complaint, making their claims timely even if filing triggered the limitations period.

Second, counsel's knowledge is generally not imputed to clients. *See Pub. Employees' Ret. Sys. of Mississippi v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 141 (S.D.N.Y. 2012) (counsel's

[3] The Terms of Use all refer to the corresponding privacy policies at the time, and do not themselves contain any substantive privacy disclosures. *See* ECF Nos. 32-1, 32-4, 32-5, 32-6.

pre-retention knowledge not "impute[d] . . . to Lead Plaintiff"). That Plaintiffs Tobutis, Meketon, and Mikec were absent class members in *Afriyie* is irrelevant. Mot. at 16. Counsel's knowledge cannot be imputed to them to trigger the statute of limitations. *See Caufield v. Colgate-Palmolive Co.*, No. 1:16-cv-04170, 2017 WL 744600, at *6 (S.D.N.Y. Feb. 24, 2017) ("[t]he knowledge of class counsel [in a related case] cannot be imputed to unnamed class members" for statute of limitations purposes).

Defendants cite no support for this imputed notice theory, relying on a single thirty-year-old case that did not discuss counsel's knowledge at all. Mot. at 16 (citing *Tab P'ship v. Grantland Fin. Corp.*, 866 F. Supp. 807, 811 (S.D.N.Y. 1994)). That case held plaintiffs' claims were time barred when they failed to file suit until over a year after defendant "liquidated their CDs" because the "CDs were collateral for the loans" involved in the alleged fraud. *See Tab P'ship*, 866 F. Supp. at 810. No similar delay occurred here.

#### iv. <u>Plaintiffs Warburton, Tobutis, Meketon, and Mikec's Claims Are Tolled Under the Continuing Violations Doctrine</u>

The "continuing violations doctrine" also tolls the limitations period here because Defendants continue to disclose (and have not recovered or obtained deletion of) Plaintiffs' video data (¶¶ 35-38, 45-48, 55-56, 63-64); *see also Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020) ("continuing violations doctrine" "tolls the limitations period until the date of the commission of the last wrongful act" where there is a series of "continuing unlawful acts").

Defendants do not dispute this as to Plaintiff Mikec. Mot. at 13. However, Defendants misstate Plaintiffs' allegations, claiming that Plaintiffs Warburton, Tobutis, and Meketon stopped using the respective apps on dates outside the limitations period (Mot. at 13-14), when Plaintiffs only alleged that they *subscribed* to the apps on those dates. ¶¶ 35-37, 45-47, 55, 63-64. Defendants

cannot "read in" to Plaintiffs' Complaint that they stopped using the NBC Apps when this plainly is not alleged. ¶¶ 38, 48, 56; *see also Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 297 (S.D.N.Y. 2015) (allegation of purchase "within the past five years" does not "clearly establish" it occurred outside the 3-year limitation period); *Fargas v. Cincinnati Mach.*, LLC, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) (rejecting statute of limitations challenge where "the [c]omplaint contains no information as to the date" because "defendants bear the burden" of establishing this affirmative defense).

### C. Plaintiffs State a Claim Under VPPA and VCPA

As a threshold matter: VPPA and VCPA claims involve substantially similar elements and are thus analyzed here together. *See, e.g.*, *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 803 (S.D.N.Y. 2025) (analyzing VPPA and VCPA together because "no court appears to have interpreted the VCPA's definition of [PII]" separately). To state a VPPA and VCPA claim, plaintiffs must plausibly allege that: (1) Defendants are "video tape service provider[s]"; (2) Defendants disclosed "personally identifiable information concerning any consumer to any person"; (3) "the disclosure was made knowingly"; and (4) "the disclosure was not authorized by another part of the statute." *Sutton v. TED Found., Inc.*, No. 1:23-cv-09219, 2026 WL 207000, at *2 (S.D.N.Y. Jan. 27, 2026); *see also* Section II; ¶¶ 208-27. Defendants do not dispute, and therefore concede, the first element with respect to VPPA (that they are video tape service providers) and part of the second element (that each NBC App transmitted video-viewing data). *See* Mot. at 17-23. Because each remaining element is plausibly alleged, Plaintiffs state VPPA and VCPA claims.

#### i. The Video-Viewing History Defendants Disclosed Is Identifiable

Defendants disclosed video-viewing data alongside individuals' full names, email addresses, and GPS coordinates. *See* Section II. This falls directly within the statutory definition of PII, as an ordinary person without any "technical expertise" can identify a person from their

"name," "email," and GPS coordinates. *See Sutton*, 2026 WL 207000, at *8 (remaining silent on GPS coordinates but finding disclosure of email and name in an "easily readable format" satisfies the PII requirement); *Smith v. Trinity Broad. of Texas, Inc.*, No. 8:24-cv-01046-JVS-ADS, 2024 WL 4394557, at *2 (C.D. Cal. Sept. 27, 2024) ("PII that enables an ordinary person to identify an individual may include . . . GPS coordinates of a particular device . . . or an email address.") (internal citations omitted). Defendants' attacks on each category of identifying information fail. Each data field, listed below, independently satisfies the VPPA's PII requirement.

**Full Name.** Unable to deny that full names are indisputably PII, Defendants challenge the "factual bases for [Plaintiffs'] allegations." *See* Mot. at 20. But that challenge is impermissible on a Rule 12 motion. *See Palma-Castillo v. New Tacolandia Inc.*, No. 1:09-cv-10374, 2011 WL 7092652, at *1 (S.D.N.Y. May 9, 2011) ("[D]efendants' motion violates the fundamental rule that a motion to dismiss cannot controvert the truth of the factual allegations set forth in the complaint.").

Defendants contend that screenshots showing the NBC Apps' transmission of full names cannot be considered unless they "accurately reflect" data collected from Plaintiffs' own historical usage "at the particular times" Plaintiffs used these apps. Mot. at 20-21 n.21. Courts have rejected this exact demand for "greater factual specificity" in VPPA cases, recognizing that testing "illustrat[ing] the mechanism by which this disclosure occurs via a hypothetical user" is sufficient even if it does not show "the specific video material [plaintiff] requested." *See Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 285–88 (S.D.N.Y. 2024); *see also Franklin v. Gen. Mills, Inc.*, No. 2:21-cv-01781, 2025 WL 2614970, at *6 (E.D.N.Y. Sept. 10, 2025) (plaintiff need not "test the 'actual' product she bought" where "investigation has revealed defects in the same line of such products"). Thus, Plaintiffs here meet the pleading standard by alleging that they used NBC Apps

that incorporated SDKs that mechanically disclosed their information—as demonstrated by testing—in the same way it did for each Class Member. *See* ¶¶ 122-23, 134-35, 144-45, 154-55, 165-66.

**Email Address.** Numerous statutes and regulations recognize email addresses as PII. 15 U.S.C.A. § 6501(8)(c) (COPPA defining "personal information" to include "e-mail address"); Cal. Civ. Code § 1798.140(v)(1) (CCPA stating the same); 45 C.F.R. § 164.514 (HIPAA regulations recognizing email addresses as individually identifiable). Courts have overwhelmingly found email addresses sufficiently identifiable for VPPA/VCPA claims. *See Aldana v. GameStop, Inc.*, No. 1:22-CV-7063, 2024 WL 708589, at *8 n.5 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, No. 1:22-CV-7063, 2024 WL 3104345 (S.D.N.Y. June 24, 2024) (J., Swain) (email address falls within definition of PII); *accord Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) (disclosure of "email address in connection with her video viewing information" supports VPPA claim). This remains true after *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), *cert. denied*, 146 S.Ct. 885 (Dec. 8, 2025) because emails are readily identifiable to an ordinary person. *See Sutton*, 2026 WL 207000, at *8 (post-Solomon case recognizing "email" as PII under VPPA). Defendants' argument that email addresses are identifiable only if they contain a person's name is factually wrong[4] and ignores the law. *See id.* at *8 ("prairie837@gmail.com" is identifiable).

[4] In fact, names are never required for something to be identifiable, as the law only requires information that can be associated with a person. *See, e.g.*, 42 U.S.C. § 1320d(6) (HIPAA defining "identifiable" information as information that "identifies the individual" or for which "there is a reasonable basis to believe that the information can be used to identify the individual"); Cal. Civ. Code § 1798.140(v)(1) (CCPA stating "Personal Information" means "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household"). Were Defendants correct, whole categories of indisputable PII—like social security numbers or phone numbers—would be excluded from the analysis.

Defendants' reliance on *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008–09 (7th Cir. 2019) is misplaced, as that out-of-circuit case did not consider the VPPA but instead dealt with Illinois's right of publicity statute, finding that "username[s]" not containing an actual name cannot trigger a "right of publicity" claim without more evidence. There are no right of publicity claims here. Defendants' citations to *Solomon*, 136 F.4th at 52 and *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022) are equally misplaced, as neither dealt with the identifiability of email addresses.

**GPS Coordinates.** The location data the NBC Apps disclosed suffices to state a VPPA claim given "how easy it is to locate a GPS coordinate on a street map." *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) ("most people" can use GPS coordinates to locate "home and work addresses" for a viewer). GPS coordinates are no less identifiable to an ordinary person than a physical address, which falls within the VPPA. *See In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 137 (E.D.N.Y. 2013) (GPS "provide[s] highly accurate location data"); *see also Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 256 (S.D.N.Y. 2025) ("addresses" fall squarely within VPPA). An ordinary person can easily type GPS coordinates into Google and locate the exact physical address.[5]

None of the cases Defendants rely on address the identifiability of GPS coordinates. *See* Mot. at 18-19 (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (finding IP address, device identifier, browser fingerprint not sufficiently identifiable but recognizing "GPS coordinates contain more power to identify a *specific person*") (emphasis in original); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (involving "device serial

[5] For example, typing in "40.7527° N, 73.9772° W" in Google Earth would pinpoint exactly the Grand Central Terminal. *Google Earth*, GOOGLE, https://earth.google.com/web?hl=en_US (last visited May 15, 2026).

number"); *Afriyie*, 775 F. Supp. 3d at 809 (involving Adobe/mParticle IDs and device IDs)).

Defendants also attempt to escape liability by adding a new "access" element found nowhere in the law. Under Defendants' revised statute, the blatantly identifiable information they disclosed is actionable only if Plaintiffs can show that an ordinary person, separate from the recipient (*e.g.*, mParticle and its employees), had the ability to *access* the data, such as via a database or by examining data transmissions directly. Mot. at 17-18. No court has adopted this standard, and for good reason.

*First*, such a standard would contradict the plain language of the VPPA, which protects against the *disclosure* of identifiable video information "to any person." *See* 18 U.S.C. § 2710 (prohibiting knowing disclosure of identifiable video-viewing history); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 (2014) (where the federal statute does not define "person," courts "look to the Dictionary Act" which defines person to include "corporations" and "companies"). There is no requirement that another person, other than the recipient of the information, *also* access the same information for VPPA liability.

*Second*, in the Second Circuit, the VPPA protects all information that is *identifiable* to an ordinary person, regardless of whether anyone actually used that information to identify an individual. *See Solomon*, 136 F.4th at 51 (PII includes not just information that actually identifies a person but also "information *capable* of being used to do so") (emphasis in original). Thus, whether someone else *accessed* that information is irrelevant.

*Finally*, Defendants' proposed "access" element directly contradicts the impetus for VPPA legislation, which was to "guard against" the "Big Brother"-like aggregation of data for "profil[ing] of a person" (e.g., by collecting "what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone"). S. Rep.

100-599 at 4342-5-6. While subsequent disclosure that would allow additional third parties to profile individuals would also violate the VPPA, Defendants' disclosure to *any* third party (e.g., mParticle) suffices to state a claim.

Under Defendants' version of the VPPA, the very conduct that led to the statute's passage would not be unlawful unless an ordinary person—separate and apart from the journalists who illegally obtained Judge Bork's video-viewing history—was also able to access the files in the journalists' possession.[6] This absurd result clearly is not the law.

That Plaintiffs uncovered Defendants' wrongdoing through expert testing does not affect the data's identifiability or actionability either. Mot. at 18 n.20. The ordinary person standard looks to the nature of the data disclosed, not the means of disclosure. *See Nickelodeon*, 827 F.3d at 267 (emphasis added) (information qualifies if it is "*the kind of information* that would readily permit an ordinary person to identify a specific individual's video-watching behavior."); *Eichenberger*, 876 F.3d at 986 (evaluating whether "an ordinary person could [] *use the information* that Defendant allegedly disclosed to identify an individual") (emphasis added). The video-viewing history Defendants transmitted with names, email addresses, and precise GPS coordinates is identifiable to an ordinary person regardless of how it is disclosed. Defendants are not immunized from VPPA liability by using an SDK, just as passing an envelope under cover-of-night to a journalist would not have excused the disclosure of Judge Bork's records.

*Solomon* does not support Defendants' reading of the VPPA. *See* Mot at. 17. While the

[6] *See Solomon*, 136 F.4th at 43 (noting that the newspaper's publication of Judge Bork's video-rental history "prompted Congress to enact" the VPPA); Michael Dolan, *Borking Around*, The New Republic (Dec. 20, 2012), https://newrepublic.com/article/111331/robert-bork-dead-video-rental-records-story-sparked-privacy-laws (recounting that the rental list became available only because the assistant manager, "who knew [Dolan] wrote for Washington *City Paper*," voluntarily produced a Xerox of the store's records); S. Rep. 100-599 at 4342-5-6.

Court noted in dicta that the Complaint there did not explain "how an ordinary person might access the information" allegedly disclosed to Facebook, that was unrelated to *Solomon*'s holding that the data was not identifiable because it was a mere "sequence of numbers" that was "not labeled" such that it could not be understood by an ordinary person. *See Solomon*, 136 F.4th at 54. This did not create a new "access" requirement, but rather tracked the Third and Ninth Circuits' application of the same ordinary person standard. *Id*. at 54 (citing *Nickelodeon*, 827 F.3d at 290; *Eichenberger*, 876 F.3d at 985). The "First Name," "Last Name," "Email Addresses," and "Video Title" Defendants disclosed in plain English easily meet that standard. *See* Section II.

**ii. <u>Defendants Knowingly Disclosed PII to Third Parties</u>**

To satisfy the knowledge element for VPPA and VCPA claims, Plaintiffs need only plead that the defendant intentionally programmed a tracking technology "with the understanding that the [technology] would transmit users' information to [a third party]." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 161–62 (S.D.N.Y. 2023). Plaintiffs meet this standard by alleging that only Defendants could incorporate the mParticle SDK in their own mobile apps. ¶¶ 106, 195. Defendants' decision to do so confirms their intention to disclose PII that can readily identify an individual, since that is the purpose of using this type of SDK. ¶¶ 92, 107. Defendants also must have intentionally disclosed identifiable video-viewing data because they configured the SDK to share this specific information. ¶¶ 7, 117, 134, 144, 154, 164. The strategic purpose of doing so was to target consumers with personalized advertisements (¶¶ 98, 106-07, 182, 215). ¶¶ 91-92, 215; *see also Aldana*, 2024 WL 708589 at *9 ("integrat[ing] or install[ing] the [tracking technology] into its website ... is sufficient to allege that [it] acted 'knowingly' under the VPPA because [the defendant] knew that the [technology] would automatically transmit users' information to Facebook"); *Lee*, 769 F. Supp. 3d at 264 (deliberate installation of tracking technology with the understanding that it would transmit PII to a third party is "akin to knowingly

setting up a video camera . . . knowing that the camera would transmit to outside journalists").

Defendants do not dispute, and thus have conceded, that they knowingly disclosed users' full names to mParticle through the NBC App and the Bravo App. *See* Mot. at 21–22. As to the NBC News, MSNBC, and NBC Sports Apps, Defendants claim that, although they knew they disclosed "device identifiers, email addresses, and, potentially, GPS location data" to mParticle, they—despite being one of the world's largest and most sophisticated media companies—did not realize that any of this information was identifiable. Mot. at 22. The Court must reject this counter-factual narrative, which not only runs counter to Plaintiffs' well-pled allegations but is plainly unbelievable. *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 1:22-cv-06348, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (rejecting, at the motion to dismiss stage, defendant's argument that it lacked the requisite VPPA knowledge where "[d]efendant's assertions are contradicted by the contents of the Complaint"); ¶ 215.

Defendants' contention that knowing disclosure requires them to understand exactly "whether mParticle had associated the disclosed [email addresses and GPS coordinates] with the user's name," (Mot. at 22) is baseless and contradicts the ordinary person standard. *See supra* Section IV.A.i; *Czarnionka*, 2022 WL 17069810, at *4 (it is "unnecessary" to allege defendant knew Facebook would "combine" information where the disclosed data "itself constituted PII"); *Aldana*, 2024 WL 708589 at *9 (similar); *see also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336–37 (N.D. Ga. 2023) (no more precise knowledge required than allegation that "Defendant installed the [tracking technology] for the specific purpose of transmitting personal viewing information"). Plaintiffs allege that Defendants knew what mParticle would do with the data (*i.e.* identify and profile individuals) because that is the SDK's purpose. *See* Section II.

Defendants' separate argument that Plaintiffs must show Defendants knew "who" each

Plaintiff and Class Member was at the "time a transmission was made" also fails. Mot. at 22. This is not a requirement under the VPPA or VCPA. *See Golden*, 688 F. Supp. 3d at 161 (rejecting NBCU's argument that complaint was deficient for failing to plead, "on a visitor-to-visitor basis," what information was saved in a given user's browser, and noting that "NBCU does not cite any authority requiring this level of knowledge for liability under the VPPA"). Defendants clearly knew who Plaintiffs and Class Members are. ¶¶ 11-13, 23-25, 35-37, 45-47, 55-56. Thus, these arguments fail as a factual matter, even if they had legal support (which they do not).

The cases Defendants cobble together do not compel otherwise, as they addressed different scenarios. *See* Mot. at 21-22 (citing *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1094, 1097 (N.D. Cal. 2015) (finding at summary judgment that Hulu did not know the incorporation of a seemingly innocuous Facebook Like button would transmit c_user cookie, which Facebook did not "t[ake] any action" on); *Mollett v. Netflix, Inc.*, No. 5:11–CV–01629, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012) (Netflix did not have sufficient knowledge that its devices would disclose PII when its users access the device screen "in the presence of other[s]" because such disclosure was never contemplated by the statute)). Neither case is comparable to Plaintiffs' allegations here.

**iii. <u>Defendants Are "Video Tape Service Providers" and Subject to the VCPA</u>**

Defendants do not dispute they are "video tape service providers" under VPPA but argue they do not fall within this definition for VCPA purposes. This argument fails.

VCPA defines "video tape service provider" as "any person engaged in the business of rental of prerecorded video cassette tapes or similar audio visual materials." *See* GBL § 672(4). VPPA similarly defines "video tape service provider" to include "any person, engaged in the business . . . of rental [and] sale" of "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Courts have routinely found video streaming companies like NBC engaged in the business of video "rental" and thus fall within the definition of "video tape

service providers" under both statutes. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 920 (9th Cir. 2015) (recognizing the business of "streaming video service[s]" like VuDu and Netflix is "offering rentals to consumers through Internet streaming"); *Golden*, 688 F. Supp. 3d at 156–57 (finding NBCU to be a video tape service provider); *Media Queue, LLC v. Netflix, Inc.*, 672 F. Supp. 2d 1022, 1026 (N.D. Cal. 2009) (recognizing Netflix is an operator of "subscription-based online movie rental services"). Defendants' argument that the VCPA does not expressly include the word "delivery" is thus irrelevant because Defendants' streaming services independently qualify as participation in the "rental" of "audio visual materials."

### D. Plaintiffs State a Claim Under GBL § 349

To state a claim under GBL § 349, a plaintiff must plead: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. California Nat. Living, Inc.*, No. 7:17-CV-09847, 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019). Whether a particular act or practice is deceptive is usually a factual question. *Kane v. Univ. of Rochester*, No. 6:23-CV-06027, 2024 WL 1178340, at *16 (W.D.N.Y. Mar. 19, 2024) (internal citation omitted). Defendants do not dispute the NBC Apps are consumer oriented. Mot. at 23-28. Plaintiffs' GBL § 349 claim satisfies each other element as well.

#### i. Plaintiffs Adequately Plead NBC's Deceptive Conduct

To determine whether conduct is deceptive under GBL § 349, courts assess whether the "representation or omission [is] likely to mislead a reasonable consumer acting reasonably under the circumstances," using an objective standard. *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y.1999). Courts routinely find it inappropriate to dismiss omissions-based deception cases at the motion stage without a full factual record. *See Pellegrino v. Procter & Gamble Co.*, No. 7:23-CV-10631, 2026 WL 880573, at *19 (S.D.N.Y. Mar. 31, 2026) ("dismissing

[p]laintiffs' omission-based claims [under GBL § 349] . . . would be inappropriate without development of a full factual record").

As explained above, Defendants' privacy policies and notices omitted (1) their use of mParticle SDKs in the NBC Apps; (2) their disclosure of directly identifiable information such as name, email, and GPS coordinates to third parties; and (3) the disclosure of specific video-viewing history to third parties along with the directly identifiable information. *See* Section IV.B.ii. Parts of their policies promise consumers they would only disclose "hashed or masked identifier" or that they would not disclose "video viewing behavior" to third parties "with[out] [consumers'] appropriate consent" and "consistent with applicable law." *Id*. These policies never mention that mParticle uses consumers' personal data to create comprehensive profiles about them based on the identifiable video history received from the NBC Apps. *See* ECF Nos. 32-2, 32-3, 32-7, 32-8; ¶¶ 3-6, 92-108. This is the hallmark of an actionable omission. *See Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 180 (2021) ("A disclaimer may not bar a [GBL § 349] claim at the pleading stage unless it utterly refutes plaintiff's allegations" by addressing "the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled.").[7]

[7] None of the cases Defendants cite involve similarly ambiguous and misleading privacy policies. *See* Mot. at 26-27 (citing *Dimond v. Darden Rests., Inc.*, No. 1:13-CV-05244, 2014 WL 3377105, at *13–14 (S.D.N.Y. July 9, 2014) ("omitted beverage price" is not deceptive where plaintiff could have just asked about the price); *Myers v. Wakefern Food Corp.*, No. 7:20-CV-08470, 2022 WL 603000, at *3–5 (S.D.N.Y. Mar. 1, 2022) (the word "vanilla" with a picture of "two vanilla beans and vanilla flower" would not lead reasonable consumer to think the vanilla flavor comes exclusively from vanilla beans, and is therefore not "inherently deceptive"); *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) (actually finding allegations "sufficient to establish" deception where defendant "continued to withhold information" about the defect of its product).

Defendants do not dispute their "noncompliance with the VPPA and VCPA's consent regimes," Mot. at 27; ¶¶ 167-172, 234, but instead contend that their noncompliance is not "so inherently deceptive[.]" Mot. at 27. This argument fails given the misleading nature of their various omissions from the privacy policies, as discussed above. *See supra*, Section IV.D.i; *see also Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 543 (E.D.N.Y. 2006) (where defendant failed to comply with "underlying federal laws," a reasonable jury could find that the defendant "engaged in a materially misleading act").

Defendants' suggestion that "the screenshots of alleged code transmissions" somehow show their conduct is not deceptive makes little sense. Mot. at 27. The suggestion that Plaintiffs cannot be deceived because they should perform expert testing or technical analysis prior to subscribing to a service to validate Defendants' representations finds no support in the law. *See In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 2:21-cv-00678, 2024 WL 5239510, at *16 (E.D.N.Y. Dec. 27, 2024) (finding it "an undue and inappropriate burden" to require consumers to have performed expert testing "at the time of purchase"). What Plaintiffs later did in preparation for the Complaint is irrelevant.

**ii. <u>Plaintiffs Adequately Plead Materiality and Injury</u>**

A "material deception is one involving information that is important to consumers and likely to affect their choice of product." *Id.* at *10 (quotations omitted). Plaintiffs have pled that had they known the NBC Apps would disclose their video-viewing history and PII they "would not have used NBC's services, or would have paid less for such services (where applicable)[.]" ¶ 237. This adequately alleges materiality, as it would have influenced their "choice of product." *See Hain Celestial*, 2024 WL 5239510, at *10.

The same allegations sufficiently allege Plaintiffs' injury under GBL § 349. To plead injury, a "plaintiff must allege that, on account of a materially misleading practice, she [or he] purchased

a product and did not receive the full value of [the] purchase." *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (also cited in Motion at 24). Plaintiffs have pled exactly this. ¶ 240; (Plaintiffs would not have "exposed themselves to privacy harm" or would not have "purchased (or would have paid significantly less for)" Defendants' services had they known about the misconduct). Plaintiffs have further alleged injury in the form of misappropriated valuable personal information (¶¶ 181, 244-245), which courts across the country have increasingly recognized as a valid injury. *See Bose v. Interclick, In*c., No. 1:10-CV-09183, 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) ("[C]ourts have recognized … privacy violations as injuries for purposes of Section 349."); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461–62 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of [personally identifying] information. . . . Consumers too recognize the value of their personal information and offer it in exchange for goods and services."); *McAferty v. Musk*, 795 F. Supp. 3d 949, 959 (W.D. Tex. 2025) ("[R]ecognizing 'what common sense compels [them] to acknowledge – the value that [PII] has in our increasingly digital economy.'").

Defendants first argue that Plaintiffs did not allege they paid for any NBC Apps and therefore did not suffer GBL § 349 injury. *See* Mot. at 24-25. But GBL § 349 does not require proof of payment for harm. *See Kane*, 2024 WL 1178340, at *17 ("benefit of bargain" injury sufficiently pled where plaintiffs "would not have provided their Private Information to [d]efendant had they known of [d]efendant's practices"). *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102 (E.D.N.Y. 2020), which Defendants cite, involved plaintiffs who specifically relied on a claim that they suffered pecuniary loss through "price premiums" but only made "boilerplate" allegations. Mot. at 24-25. Meanwhile, *Small v. Lorillard Tobacco Co.*, 720

N.E.2d 892 (N.Y. 1999), on which Defendants also rely, does not stand for an overall rejection of the "benefit of the bargain" theory of injury, as Defendants contend (Mot. at 25), but rather held that when plaintiffs confine their injury theory to "monetary recoupment of the purchase price," such claim is not sustainable without allegations of payment, because then there is no "manifestation of [] pecuniary . . . harm." *Small*, 720 N.E.2d at 898. Plaintiffs' claims are not so limited here.

Defendants also contend, without authority, that "the mere collection and consolidation of data" is insufficient as a GBL § 349 injury. Mot. at 25-26. That ignores Plaintiffs' well-pled allegations and the well-settled case law allowing GBL claims premised on privacy violations. *See Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t cannot be doubted that a privacy invasion claim … may be stated under GBL § 349"); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024) ("New York courts have held that a privacy injury can be the basis for a § 349 claim[.]").[8]

Defendants' argument that certain Plaintiffs' continued use of the Apps negates materiality also fails. *See* Mot. at 25 n.22. The only case Defendants cite, *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013), dealt with an allegedly deceptive auto-renew feature in satellite radio accounts. The court held that "XM subscribers who wished to have their service automatically renewed did not suffer a cognizable GBL § 349 injury" (*id*. at 74) because they *wanted* the allegedly challenged practice. That is not the case here, where continued use of the NBC Apps is unrelated to, and certainly does not show that consumers "wished" for or "desired," the disclosure of their private information.

[8] Defendants nit-pick that Plaintiffs did not allege they specifically enabled any device settings for Defendants to overcome, but that is not required to plead a privacy injury under GBL. *See* Mot. at 25-26.

**iii. <u>Plaintiffs Demonstrate the Territoriality Element of GBL § 349</u>**

As an initial matter, Plaintiffs Williams, Prevost, and Warburton are New York residents (¶¶ 10, 22, 34), and it is reasonable to infer they suffered the GBL violation while in New York in cases involving use of online services. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 402–03 (S.D.N.Y. 2010) (the violation would occur where "each plaintiff used the Internet," which would be in their "home state" unless otherwise alleged); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1015 (N.D. Cal. 2024) (drawing "reasonable inference" plaintiffs were in New York at the time of the violation because they were "New York residents").[9]

As for "out-of-state victim[s]" like Plaintiffs Tobutis, Meketon, and Mikec, they "fall[] within the territorial reach of section 349" because they participated in a "deceptive transaction in New York." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013) (allowing out-of-state plaintiffs to bring GBL § 349 claims against defendant that received payment at its New York office); *see also Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 168 (S.D.N.Y. 2014) (out-of-state plaintiffs can bring GBL § 349 claims involving online transactions against a defendant who "operated a website in New York"). Here, at least Defendants NBCUniversal and NBC Digital operate the NBC Apps—which Plaintiffs subscribed to and watched pre-recorded videos on—from their headquarters in New York. ¶¶ 71-72. Plaintiffs also allege these Defendants incorporated the mParticle SDKs and disclosed Plaintiffs' identifiable video-viewing data to mParticle from their headquarters in New York. ¶¶ 71-72, 77, 205-06. They have also selected New York as the forum in their terms. ¶ 78. This is sufficient to establish GBL standing. *See Polk v. Del Gatto, Inc.*, No.

[9] *Abraham v. Am. Home Mortg. Servicing, Inc.* is inapposite as that case involves non-New York mortgage servicers who "inflated appraisals," where "loan transactions with different lenders in different offices in different states over a nine-year period" could not give rise to an inference that the underlying activities took place in New York. 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013)

1:21-CV-00129, 2021 WL 3146291, at *10 (S.D.N.Y. July 23, 2021) (sustaining GBL § 349 claims brought by out-of-state residents because "payment[]" and "process[ing]" sales occurred in New York and the defendant itself selected a NY "choice-of-law provision"); *Gutierrez v. Lemonade, Inc.*, No. 1:21-CV-07070, 2022 WL 3214852, at *3 (S.D.N.Y. Aug. 9, 2022) (rejecting standing argument as "without merit" where "transaction was consummated on a website in New York" whose terms included a New York choice of law clause).

The cases Defendants rely on do not apply here, as they involved much more tenuous connections to New York. *See* Mot. at 28 (citing *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y. App. 2002) (Florida plaintiff purchased insurance in Florida through a Florida agent); *Greene v. Clean Rite Ctrs., LLC*, 714 F. Supp. 3d 134, 140 (E.D.N.Y. 2024) (Massachusetts resident purchased a laundry card in Massachusetts and never visited New York); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547–48 (S.D.N.Y. 2014) (plaintiffs conceded they were not injured in New York nor did transaction occur there)).

**iv. <u>Plaintiffs' GBL Claims Are Not Duplicative of Their VPPA/VCPA Claims</u>**

Defendants rely on the Court's prior opinion in *Afriyie* to support their claim that Plaintiffs' GBL claims are duplicative, but that ignores the updated allegations here. *See* Mot. at 24.

Plaintiffs' Complaint here adds allegations that Defendants not only deceived Plaintiffs about the *disclosure* of their personal video-viewing data, but also the recipient's *use* of that data, such as by "consolidating" this data into Plaintiffs' individual profiles that mParticle keeps, which allows it to identify and profile Plaintiffs across the internet. ¶ 234; *see also* ¶¶ 98-104. This addresses the duplication issue in the exact way the Court previously ordered. *See Afriyie*, 775 F. Supp. 3d at 812 (recognizing allegations that "such data enabled third parties to identify particular individuals" would have solved the issue).

**E. <u>Plaintiffs State an Unjust Enrichment Claim</u>**

Plaintiffs allege that Defendants receive benefits by disclosing identifiable video-viewing history to third parties like mParticle and continuously monetizing this data (¶¶ 107, 182, 215, 244-45), while Plaintiffs are harmed by Defendants' unlawful disclosure and ongoing use of their private information. ¶¶ 183, 216, 247-48. Plaintiffs further alleged that they "would not have" used Defendants' services and provided any such data had they known that Defendants would disclose this data to third parties. ¶ 237. These allegations suffice to state an unjust enrichment claim under New York law. *See*, *e.g.*, *Kane*, 2024 WL 1178340, at *15 (sustaining unjust enrichment claim where plaintiffs alleged they would not have used defendant's services "had they known about Defendant's disclosure of their Private Information").

Plaintiffs' unjust enrichment claim is not duplicative, as Defendants suggest. *See* Mot. at 28-29. While Plaintiffs' legal claims capture Defendants' *disclosure* of the identifiable video-viewing history data, they do not capture Defendants' subsequent monetization of this data for their own benefit. ¶¶ 107, 215. Courts routinely recognize equitable claims, like unjust enrichment, are properly alleged to address this type of conduct. *See Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 199 (S.D.N.Y. 2017) (sustaining unjust enrichment claim based on the defendant's "use[]" of "Plaintiff's personal information for its own pecuniary benefit"); *see also Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 857 (N.D. Cal. 2022) (sustaining plaintiffs' unjust enrichment claim alleged concurrently with a VPPA claim).

Defendants rely on this Court's prior holding in *Afriyie* (Mot. at 29) for their position, but that complaint contained different allegations. Plaintiffs here have updated their factual allegations significantly to make clear that Defendants receive ongoing benefits from the identifiable video-viewing history disclosed to third parties such as mParticle long after the actual disclosure. *See* ¶¶

107, 215 (explaining that mParticle's services allowed Defendants to use the disclosed data for targeted advertising and delivering individualized intelligence on user behaviors). None of this was present in the *Afriyie* complaint. *See Afriyie*, ECF No. 24.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Dated: May 29, 2026

/s/ *Christian Levis*
Christian Levis
Amanda Fiorilla
Nicole A. Veno
Claire Noelle Forde
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
nveno@lowey.com
nforde@lowey.com

Carol C. Villegas
Michael P. Canty
Danielle Izzo Mazzeo
Gloria J. Medina
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Fl.
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
dimazzeo@labaton.com
gmedina@labaton.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,612 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 29, 2026 /s/ *Christian Levis*