**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL WILLIAMS, KELLIE PREVOST, SCOTT WARBURTON, DEMETRIA TOBUTIS, RICHARD MEKETON, and LISA MIKEC, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

NBCUNIVERSAL MEDIA, LLC, NBC NEWS DIGITAL, LLC, and the COMCAST CORPORATION,

*Defendants*.

Case No: 1:25-cv-07614-LTS-VF

Hon. Laura Taylor Swain

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

ARGUMENT ........................................................................ 1

I. Plaintiffs Fail to Untie the Group Pleading Issues Underlying Each Claim ........................ 1

II. The Opposition Does Not Remedy the Timeliness Issues ........................................ 2

III. The VPPA and VCPA Claims Should Be Dismissed ........................................ 5

IV. The GBL § 349 and Unjust Enrichment Claims Also Fail ........................................ 8

CONCLUSION ........................................................................ 11

LOCAL CIVIL RULE 7.1(c) CERTIFICATION ........................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025) (Swain, J.) ....................8, 10, 11

*Afriyie v. NBCUniversal*,
No. 23-cv-09433 (S.D.N.Y.)....................1, 5, 8, 12

*Baker-Rhett v. Aspiro AB*,
324 F. Supp. 3d 407 (S.D.N.Y. 2018)....................9

*Bose v. Interclick, Inc.*,
No. 10-CV-09183, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)....................10

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010).................... 9-10

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)....................10

*Collins v. Pearson Education, Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024)....................5

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) .................... 5-6

*Dodds v. Cigna Secs., Inc.*,
12 F.3d 346 (2d Cir. 1993)....................3

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ....................4

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025)....................4

*Fargas v. Cincinnati Machine, LLC*,
986 F. Supp. 2d 420 (S.D.N.Y. 2013).................... 2-3

*Franklin v. General Mills, Inc.*,
No. 21-CV-01781 (JMA) (AYS), 2025 WL 2614970 (E.D.N.Y. Sept. 10, 2025)....................5

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....................4

*In re Fyre Festival Litigation*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019)....................9

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ..........9

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 914 (9th Cir. 2015) .......... 7-8

*In re Optimal U.S. Litig.*,
837 F. Supp. 2d 244 (S.D.N.Y. 2011)..........1

*In re Trilegiant Corp.*,
11 F. Supp. 3d 82 (D. Conn. 2014)..........3

*Iowa Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
340 F. Supp. 3d 285 (S.D.N.Y. 2018)..........4

*Jones v. Parmley*,
No. 5:98-CV-374 FJS/GHL, 2005 WL 928666 (N.D.N.Y. Apr. 20, 2005) ..........2

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024).......... 10-11

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d Cir. 2012) .......... 8-9

*Leanos v. Better Home & Finance Holding Co.*,
No. 25-cv-07893-EMC, 2026 WL 962827 (N.D. Cal. Apr. 9, 2026)..........4, 5

*McArdle-Bracelin v. Cong. Hotel, LLC*,
No. 1:20-CV-861, 2022 WL 486805 (N.D.N.Y. Feb. 17, 2022)..........1

*Media Queue, LLC v. Netflix, Inc.*,
672 F. Supp. 2d 1022 (N.D. Cal. 2009) ..........7

*Mount v. PulsePoint, Inc.*,
684 Fed. Appx. 32 (2d Cir. 2017)..........10

*Ortiz v. Consolidated Edison Co. of New York, Inc.*,
801 F. Supp. 3d 260 (S.D.N.Y. 2025)..........2

*Polk v. Del Gatto, Inc.*,
No. 21 CIV. 129 (PAE), 2021 WL 3146291 (S.D.N.Y. July 23, 2021) ..........9

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ..........3, 6, 7

*Walker v. Keurig Dr Pepper Inc.*,
No. 22-CV-5557 (MKB), 2024 WL 3432031 (E.D.N.Y. July 16, 2024)..........5

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... 7

**Statutes**

N.Y. Gen. Bus. Law § 349 .......... 8, 9, 10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 9 .......... 4

The Plaintiffs' Opposition (the "Opposition") fails to remedy the dispositive issues identified in Defendants' motion to dismiss (the "Motion"). Accordingly, the Court should dismiss this matter—as it did in the preceding *Afriyie* case—with prejudice.

**ARGUMENT**

**I. Plaintiffs Fail to Untie the Group Pleading Issues Underlying Each Claim**

Plaintiffs acknowledge that to allege claims against a group of defendants, they must "give[] a factual basis for the joint activity" underlying those common claims. (Opp. at 4 (quoting *McArdle-Bracelin v. Cong. Hotel, LLC*, No. 1:20-CV-861, 2022 WL 486805, at *7 (N.D.N.Y. Feb. 17, 2022).) Plaintiffs contend Complaint paragraphs 71-74 meet this requirement by alleging that Defendants NBCUniversal Media and NBC News Digital were the developers for specific apps, and Defendant Comcast has "direct oversight" over the other two. (*Id.* at 4-5.) These allegations, Plaintiffs say, are enough to show "concerted action" between all the Defendants, such that each may be liable for the alleged disclosures or practices underlying each app addressed in the Complaint. (*Id.* at 5.)

Plaintiffs are wrong. Starting with Comcast, all the Complaint alleges is that there is "significant overlap in [the other Defendants'] and Comcasts' leadership teams." (Compl. ¶ 74.) But Plaintiffs' own cases explain that "mere allegations of a corporate relationship" or the existence of "shared directors" is *not* enough to hold a corporation liable under the group pleading doctrine. *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 264 (S.D.N.Y. 2011). Rather, a factual connection is required. In *In re Optimal*, this was satisfied by allegations that, *inter alia*, a corporate defendant actively "*reviewed key documents*" underlying the plaintiffs' allegations of fraud. *Id.* (emphasis in original). Here, Plaintiffs allege a handful of overlapping executives but do not allege those executives, or Comcast in general, had any involvement with any of the apps

or data disclosure practices at issue. (Compl. ¶ 74.) Because there are no factual allegations connecting Comcast to any of Plaintiffs' claims, it must be dismissed from this case.

Similarly, Plaintiffs cannot hold Defendants NBCUniversal Media and NBC News Digital liable for *every* app at issue in the Complaint. Plaintiffs argue that the Motion ignores the Complaint's "allegations of concerted action," (Opp. at 5), but Plaintiffs only point to allegations stating which Defendant "develope[d]" each app—not how each Defendant supposedly worked in concert with other Defendants on the apps they did not develop. That puts Plaintiffs far afield from cases like *Ortiz v. Consolidated Edison Co. of New York, Inc.*, where the plaintiffs alleged the various defendants "jointly exercised control" over different conduct relevant to their claims. 801 F. Supp. 3d 260, 296 (S.D.N.Y. 2025).

## II. The Opposition Does Not Remedy the Timeliness Issues

Despite their attempts, Plaintiffs cannot overcome the expiration of the statute of limitations. Taking their arguments in reverse order, Plaintiffs criticize the assumption that the specific dates stated for Plaintiffs Warburton, Tobutis, and Meketon mark the beginning of the statutory period, because those Plaintiffs may have continued to use their apps. (Opp. at 10-11.) That is not a fair reading of the Complaint, which, apart from these three Plaintiffs, is *specific* about the beginning and end of every use period. (*See*, *e.g.*, Compl. ¶ 11.) Given as much, the rightful implication is that the omission of an end date for these three individuals was intentional and indicates these Plaintiffs did not use the NBCU apps in subsequent years. *See*, *e.g.*, *Jones v. Parmley*, No. 5:98-CV-374 FJS/GHL, 2005 WL 928666, at *2 (N.D.N.Y. Apr. 20, 2005) (applying principles of *expressio unius est exclusio alterius* to the plaintiff's specific pleaded theories of liability). Indeed, the inclusion of specific beginning and end use dates for the majority of Plaintiffs—and a single date for the others—readily distinguishes this situation from

the ones addressed in cases like *Fargas v. Cincinnati Machine, LLC*, cited by Plaintiffs, where a complaint provides "*no information* as to . . . date[s]" relevant to this issue. 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) (emphasis added).

Next, Plaintiffs misunderstand the point about Plaintiffs' counsel's knowledge. Defendants do not argue that counsel's knowledge must be "impute[d]" to their clients. (Opp. at 9-10.) Rather, the Motion makes the simpler – and decisive – point that because Plaintiffs' attorneys observed the data sharing here as early as August 2023, that supports that others – including Plaintiffs – could have done so too. (Mot. at 16.) Moreover, as discussed below, if Plaintiffs intend to rely on their allegations that the computer code disclosures here had to be "deciphered" to even be understood (i.e., to avoid the statute of limitations issues), that means the disclosures were *not* understandable by an ordinary person and, thus, fail to meet the applicable standard articulated by *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54 (2d Cir.), *cert. denied*, 146 S. Ct. 885 (2025) ("implausible" that ordinary persons could understand disclosures made via "computer code"). Plaintiffs cannot have it both ways.

Plaintiffs also fail to rebut the overt disclosures made in the NBCU privacy policies, which describe—and therefore were sufficient to put Plaintiffs on notice of—the data practices alleged in the Complaint. Plaintiffs argue that the various descriptions of NBCU's privacy and data practices don't describe the disclosures alleged in the Complaint precisely enough by, for example, not identifying the specific information disclosed or that it went to mParticle in particular. (Opp. at 8.) This argument misunderstands the standard of *inquiry* notice. "Actual knowledge" of the specific claim is not required; rather, the standard looks to whether a *duty of inquiry* is triggered. *In re Trilegiant Corp.,* 11 F. Supp. 3d 82, 106 (D. Conn. 2014) (quoting *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993)). Given that NBCU's various policies

repeatedly discuss what information is collected (e.g., the collection of personal and device information), who it was shared with (e.g., third party partners), and how it was used (e.g., for marketing and analytics), (Mot. at 14-15), the Plaintiffs were put on inquiry notice long ago. *Leanos v. Better Home & Finance Holding Co.* is absolutely relevant to this point: as the case explains, "where the privacy policy discloses *the possibility of sharing information* with third parties [in a case about sharing information with third parties,] courts have found the delayed discovery rule inapplicable." No. 25-cv-07893-EMC, 2026 WL 962827, at *5 (N.D. Cal. Apr. 9, 2026) (emphasis added).

Finally, Plaintiffs argue that the statutory period was tolled because the Defendants either "surreptitiously incorporated tracking technology" into the apps or "fraudulently concealed" their operation, which was sufficient to invoke the discovery rule. (Opp. at 6-7.) Neither argument bears fruit. Plaintiffs' "surreptitious" argument fails because, as discussed above, NBCU disclosed its data practices in its privacy policies, which puts this case at odds with Plaintiffs' cited cases. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (discovery rule applied because the relevant privacy policy "indicate[d] that the type of personal and healthcare information [that was disclosed through a pixel] would not be shared with third parties"); *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *10 (N.D. Cal. July 22, 2025) (same); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 859, 870 (N.D. Cal. 2025) (discovery rule applied where plaintiff "opted out" of cookies, but cookies were used anyway). Plaintiffs' fraudulent concealment argument fails as well. To invoke fraudulent concealment, Plaintiffs must meet Rule 9's heightened pleading requirements, a burden they don't even attempt to meet here. *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 333 (S.D.N.Y. 2018). They also must allege affirmative or self-

executing "concealment," which is not possible where, as here, the terms associated with the apps disclose the conduct at issue, *Leanos*, 2026 WL 962827, at *5, and the operation of the software is otherwise discoverable—as Plaintiffs' counsel themselves demonstrated through the materials included in the *Afriyie* complaint.

### III. The VPPA and VCPA Claims Should Be Dismissed

The Opposition also fails to overcome the critical flaws of Plaintiffs' VPPA and VCPA claims. **First,** as to the alleged "full name" disclosures from the NBC and Bravo Apps, Plaintiffs cite *Collins v. Pearson Education, Inc.*, which says that a VPPA plaintiff does not need to plead the actual content that was disclosed, such as the "specific video title" watched. 721 F. Supp. 3d 274, 285 (S.D.N.Y. 2024). This fails to address Defendants' argument, which is that the Complaint must at least plausibly allege that *software capable of making the "full name" disclosures was present* in the app versions the Plaintiffs used. The Complaint fails to do this because Plaintiffs do not allege that "the independent testing [forming the basis of their VPPA and VCPA claims] was performed reasonably near in time to" Plaintiffs alleged use of the NBC and Bravo Apps. *Walker v. Keurig Dr Pepper Inc.*, No. 22-CV-5557 (MKB), 2024 WL 3432031, at *4 (E.D.N.Y. July 16, 2024) (citing collected cases). *Franklin v. General Mills, Inc.*, cited by Plaintiffs, is in accord; there, plaintiff's purchases were allegedly made "during and only slightly after" the testing identified in the complaint. No. 21-CV-01781 (JMA) (AYS), 2025 WL 2614970, at *8 (E.D.N.Y. Sept. 10, 2025). Plaintiffs do not make that connection here, so the allegations regarding "full name" disclosures falter.

**Second,** Plaintiffs fail to show that email addresses or GPS coordinates are categorically identifying under *Solomon*. Initially, their criticism of the Seventh Circuit's treatment of email addresses in *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008-09 (7th Cir. 2019), is hollow; they

discount the decision because it addressed a different statute, yet they base their *own* argument on other statutes. (Opp. at 14.) In any event, Plaintiffs' arguments as to both email addresses and GPS coordinates fail. *Solomon* requires that the disclosed information allow an *ordinary person* to identify who it is linked to. 136 F.4th at 54. An ordinary person may assume that an email address is associated with some email account holder (exactly as they might assume a Facebook ID is)—but how could they make the required connection to who that account holder is? The *Solomon* plaintiffs at least proposed a way that someone might link a Facebook ID with a certain individual such that it would be identifying under the VPPA (i.e. typing the Facebook ID into a web browser after www.facebook.com, which would lead to the individual's Facebook page), but the Second Circuit still held the identifier didn't satisfy the test. *Id.* Here, Plaintiffs provide *no* method an ordinary person could use to reverse engineer an email address and link it to someone in particular. Things are worse with GPS coordinates. The Opposition gives the example of GPS coordinates for Grand Central Terminal. (Opp. at 14 n.5.) At best, those coordinates might relate to any one of the estimated 750,000 people that pass through the station every day. That is not identifying to anyone, much less *Solomon*'s ordinary person.

**Third**, Plaintiffs are wrong that the VPPA only looks to the "nature of the data disclosed." (Opp. at 16.) Indeed, *Solomon* makes clear *how* data is disclosed also matters. In *Solomon*, the court addressed both where the data could be accessed (i.e., in "the Pixel's PageView") and that the data was encoded (i.e., coded with "many characters, numbers, and letters"). 136 F.4th at 54. The court then held that if an ordinary person could not *access* or *decipher* the data, it is not identifying under the VPPA. *Id.* To use Plaintiffs' example, if an ordinary person were shown "an envelope" with a list of names and videos, it would be easy to access (you open it) and understand (you read it). (Opp. at 16.) But Plaintiffs *overtly allege* that

the information at issue here could only be obtained by "deciphering the coding language," which "requires advanced expertise." (Compl. ¶ 196.) Thus, while the Complaint *presents* the transmitted information in "plain text," it explains that an ordinary person would not be able to find or decipher it without the help of technical experts. That is disqualifying under *Solomon*.

**Fourth,** Plaintiffs do not show a plausible *knowing* disclosure. They primarily argue that because "Defendants knew what mParticle would do with the [disclosed] data (i.e., identify and profile individuals)," Defendants necessarily knew *any* transmission to mParticle would be identifying. (Opp. at 18.) But that argument is also foreclosed by *Solomon*, which rejected the First Circuit's "reasonable foreseeability" standard. 136 F.4th at 49 (discussing *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016)). In addition, Plaintiffs miscast Defendants' point about device users. Even if Defendants "knew who Plaintiffs . . . are," (Opp. at 19), the Complaint provides no way that Defendants could have known who was using Plaintiffs' *devices*—which is what Plaintiffs ultimately allege was tracked (*see*, *e.g.*, Compl. ¶ 85)—at the time of any disclosure. Thus, there are no facts showing that any disclosure that occurred here was made knowingly by any Defendant.

**Fifth**, Plaintiffs make no real effort to show that Defendants are subject to the VCPA, which applies only to video *renters* and *sellers*. They suggest courts have "routinely found" that "video streaming companies" are engaged in "rentals." (Opp. at 19-20.) But the two cases they cite do not support that. One does not address video streaming at all but, instead, focused on Netflix's 2009 "subscription-based online movie rental service[]" that allowed users to "check out" and receive DVDs by mail. *Media Queue, LLC v. Netflix, Inc.*, 672 F. Supp. 2d 1022, 1026 (N.D. Cal. 2009). The other similarly addresses the DVD-by-mail rental business, but included a single sentence footnote that errantly referred to the online streaming businesses as "offering

rentals." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 920 n.2 (9th Cir. 2015). And neither decision was a VCPA or VPPA case. Neither case carries the weight Plaintiffs imply.

## IV. The GBL § 349 and Unjust Enrichment Claims Also Fail

The Opposition also does not make a case for why the GBL or unjust enrichment claims should proceed. On the threshold issue of overlap with the VPPA/VCPA claims, Plaintiffs contend their Complaint includes an entirely new category of allegations addressing how any disclosed data is *used*, which they contend was not addressed in *Afriyie* and, thus, supports the GBL and unjust enrichment claims even if the VPPA/VCPA claims fail. (Opp. at 26.) That is manifestly not true. The *Afriyie* complaint alleged both that data was disclosed *and* that the disclosed data was "valuable . . . in the digital advertising-related market for consumer information," which NBCU used to "enhance the 'targeting' of . . . ads" and provided NBCU "with economic, intangible, and other benefits, including highly valuable data for analytics, advertising, and improvement of their platforms, algorithms, and advertising services." *Afriyie* FAC ¶¶ 94-95, 160. While there might be differences at the edges, the theories between *Afriyie* and this matter are the same and, in turn, the GBL and unjust enrichment claims remain redundant of the VPPA and VCPA claims. *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 812-813 (S.D.N.Y. 2025) (Swain, J.).

The Opposition also does not account for the GBL's territorial limits. First, it contends that the out-of-state residents allege they participated in a "deceptive transaction in New York" because "Defendants NBCUniversal and NBC Digital operate the NBC Apps . . . from their headquarters in New York," and "incorporated the mParticle SDKs and disclosed Plaintiffs' [PII] from their headquarters in New York." (Opp. at 25.) But the *Complaint* does not make any specific allegations about where any conduct relevant to the GBL claim occurred and Plaintiffs

cannot rely on conclusory allegations that conduct "occurred in this state." *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) (rejecting similar allegations as conclusory and insufficient to ground GBL § 349 claim). This failure to allege specific in-state activity also puts the matter outside cases like *Polk v. Del Gatto, Inc.*, where the plaintiff *did* allege in-state activity, like the defendant's sending of payments from its New York location. No. 21 CIV. 129 (PAE), 2021 WL 3146291, at *10 (S.D.N.Y. July 23, 2021). Nor does the selection of a New York *forum* in the NBCU terms cure the deficiency. (Opp. at 25-26.) While courts may look to a defendant's *choice of law* clause for a connection to the state—as opposed to a forum selection clause—where, as here, the clause is focused on the *contract itself*, (*see* Landis Decl. to Mot. Ex. A ("*This agreement* shall be governed by, construed and enforced in accordance with the laws of the State of New York") (emphasis added)), rather than "the entire relationship between the contracting parties," it cannot satisfy the GBL's territoriality requirement. *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 417 (S.D.N.Y. 2018) (examining similar provisions and dismissing GBL claim).

Second, the New York resident Plaintiffs are not entitled to a presumption that they were injured in the state. While the out-of-circuit decision in *In re Meta Pixel Tax Filing Cases*, applied that presumption, 724 F. Supp. 3d 987, 1015 (N.D. Cal. 2024), courts in this district do not do so, *see In re Fyre Festival Litigation*, 399 F. Supp. 3d 203, 223-24 (S.D.N.Y. 2019) (holding that New York resident plaintiffs lacked statutory standing to pursue a GBL § 349 claim where they did not allege they saw online and social media advertising "while in New York"). *Chiste v. Hotels.com L.P.*, cited by Plaintiffs, did not involve any New York residents, so there was no cause for the court to determine whether the GBL § 349's territoriality requirement can be affirmatively satisfied based on New York residency allegations alone. 756 F. Supp. 2d 382,

402 (S.D.N.Y. 2010) (dismissing GBL claims brought by Virgina, Colorado, and Texas residents).

Plaintiffs also do not identify any facts pleaded in the Complaint supporting the requisite materiality. The sole allegation the Opposition points to is that Plaintiffs would not have used or would have paid less "had they known the NBC Apps would disclose their video-viewing history and PII." (Opp at 22.) But even assuming this is a well-pleaded fact (as opposed to a rote and unsupported conclusion), that allegation goes to the same issues addressed in Plaintiffs' VPPA/VCPA claim and, as the Court previously held in *Afriyie*, fails to independently support a GBL claim. *Afriyie*, 775 F. Supp. 3d at 812. Notably, the single paragraph addressing materiality says nothing at all about the Defendants' alleged practice of "collecting and consolidating . . . data . . . regardless of their device settings." (Compl. ¶ 234.) Thus, Plaintiffs allege nothing supporting that issue was material to their use of the apps.

On the GBL's injury requirement, Plaintiffs contend they allege a "privacy" injury redressable through their GBL § 349 claim. (*See*, *e.g.*, Opp. at 23.) The case law does not support their sweeping conclusion. The Second Circuit has agreed that "privacy" injuries *can* support a GBL claim where "confidential, individually identifiable information—such as medical records or a Social Security number"—has been collected. *Mount v. PulsePoint, Inc.*, 684 Fed. Appx. 32, 35 (2d Cir. 2017), *as amended* (May 3, 2017). Courts have criticized *Bose v. Interclick, Inc.*'s gloss on this issue, as the cases it relied on also "involved Social Security numbers and medical records," instead of greenlighting "any" privacy harms as a qualifying injury, as Plaintiffs do here. *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *9 (S.D.N.Y. July 12, 2018) (discussing *Bose v. Interclick, Inc.*, No. 10-CV-09183, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)). The other cases Plaintiffs cite appreciate this requirement. *See*, *e.g.*, *Kane v. Univ. of*

*Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *1 (W.D.N.Y. Mar. 19, 2024) (case addressing transmission of PII and "non-public personal health information" to Facebook). Here, Plaintiffs do not allege any "confidential, individually identifiable information" is at issue. Nor can they rely on the protective reach of the VPPA or VCPA over certain data, since they do not state a claim under those statutes.

Finally, Plaintiffs' arguments regarding their failure to allege any actionable deceptions or omissions fail for the reasons addressed above. In particular, while they *argue* their theory has expanded beyond the repurposing of their meritless VPPA and VCPA claims, (Opp. at 21 ("[NBCU's] policies never mention that mParticle uses consumers' personal data to create comprehensive profiles about them based on the identifiable video history received from the NBC Apps.")), their factual allegations supporting the GBL § 349 claim turn only on the alleged video-related disclosures, (*see*, *e.g.*, Compl. ¶ 239 (alleging only that Plaintiffs "had no way of knowing Defendants secretly disclosed [PII] and video viewing histories"). In doing so, they fail to allege any independent basis for their GBL claim. *Afriyie*, 775 F. Supp. 3d at 812.

## **CONCLUSION**

Because Plaintiffs fail to plausibly plead any of their claims, this Court should dismiss the Complaint with prejudice.

Dated: June 12, 2026

Respectfully submitted,

By: */s/ Jeffrey Landis*

Jeffrey Landis
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
Email: jeff@zwillgen.com

Sudhir V. Rao
ZWILLGEN PLLC
183 Madison Avenue, Suite 1601
New York, NY 10016
Telephone: (646) 362-5590
Email: sudhir.rao@zwillgen.com

Benjamin S. Thomassen (*pro hac vice* forthcoming)
ZWILLGEN PLLC
One North LaSalle St. Suite 4600
Chicago, IL 60602
Telephone: (312) 685-2278
Email: ben.thomassen@zwillgen.com

**LOCAL CIVIL RULE 7.1(c) CERTIFICATION**

I hereby certify that this memorandum contains 3,485 words, in compliance with Local Civil Rule 7.1(c) and this Court's Individual Practice Rule A.2(h).

Dated: June 12, 2026

By: /s/ *Jeffrey Landis*
Jeffrey Landis